J-S72045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.E.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| A.C.F. | |
| APPEAL OF: A.C.F. NOW A.F.M. | No. 1284 WDA 2014 |

Appeal from the Order entered July 7, 2014,
in the Court of Common Pleas of Blair County,
Civil Division, at No(s): 2009 GN 242

BEFORE:  BENDER, P.J.E., SHOGAN, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JANUARY 02, 2015**

A.F.M. (Mother) appeals from the order entered July 7, 2014, in the Blair County Court of Common Pleas, which readopted the trial court's prior order of April 29, 2013, following remand from this Court.  The April 29, 2013 order awarded shared physical custody of Mother's minor son, G.S. (Child), to his biological father, C.E.S. (Father) during the school year, with Mother having shared physical custody during the summer, certain holidays, and whenever Mother visits Blair County.  The order also awarded the parties shared legal custody.  We affirm.

A prior panel of this Court summarized the relevant facts and procedural history of this matter as follows.

> Mother and [Father] were never married.  Child was born in September of 2007.  The parties separated in January of 2009.

_____

* Retired Senior Judge specially assigned to the Superior Court.

Following a hearing on October 16, 2009, an order was entered on October 22, 2009, directing the parties to share physical custody. At the time, the parties lived in close proximity to each other in Altoona.

On March 17, 2011, Mother filed a petition for modification of the October 22, 2009 order due to her relocation to another state. On May 6, 2011, Mother filed a petition for special relief seeking a temporary custody order until the custody evidentiary hearing could be held due to an emergency which required her to relocate to Louisiana immediately. Mother also filed a notice of proposed relocation. At a hearing on May 16, 2011, Mother's petition for special relief was denied, and Father served a counter-affidavit regarding relocation on Mother.

On September 15, 2011, a custody hearing was held regarding Mother's relocation to Louisiana. An order was entered on September 30, 2011, which alternated the custody of Child in three-month intervals. The order also provided for "Court review the year the child is scheduled to begin first grade and not before then." As Child approached first grade and the parties were unable to agree on where Child should reside and attend school, Father filed a petition for custody review on June 7, 2013. A hearing was held on August 29, 2013, and an order was entered on that date awarding Father primary physical custody of Child during the school year and awarding Mother periods of partial physical custody during the summer months, holidays, and whenever she is visiting Altoona. Mother's petition for reconsideration was denied without further hearing. Mother filed a timely notice of appeal along with a concise statement of errors complained of on appeal. The trial court issued an opinion in support of its decision on October 28, 2013.

*C.E.S. v. A.C.F.*, 1570 WDA 2013 (Pa. Super. 2014) (unpublished memorandum at 1-2).

On June 10, 2014, a panel of this Court vacated the trial court's August 29, 2013 order. The panel concluded that a number of the court's statements lacked support in the record. Specifically, the panel rejected the court's finding that Child had a relationship with his maternal grandparents

-2-

while living with Father. *Id.* at 6. The panel "further question[ed]" the court's view that Child could maintain his close relationship with his half-brother (Half-Brother), Mother's son from another relationship, who was only one year older than Child, when the trial court's custody order would result in Child only seeing Half-Brother for approximately one month during the summer. *Id.* at 7. The panel rejected the finding that "the father of [Half-Brother] has any interest or intention of getting together with Father and Child during the periods that both children are in Altoona." *Id.* Finally, the panel concluded that the court had considered erroneously the custody relocation factors laid out at 23 Pa.C.S. § 5337(h), rather than the best interest factors found at 23 Pa.C.S. § 5328(a). *Id.* at 7-8. Accordingly, the panel remanded the case for the court to "reconsider the testimony, analyze this matter in light of the Section 5328(a) custody factors, and write a new opinion supporting its decision." *Id.* at 8 (footnote omitted).

The trial court complied with this Court's memorandum by issuing an opinion and order dated July 7, 2014. Therein, the trial court indicated that it had considered the Section 5328(a) custody factors, and readopted its August 29, 2013 order.[1] On August 6, 2014, Mother filed a notice of appeal,

---

[1] In her brief, Mother states that the trial court failed to enter a new order to replace the vacated August 29, 2013 order. Mother's Brief at 10. We conclude that the trial court's July 7, 2014 opinion and order function as an appealable order, and that Mother's appeal is properly before us. While the trial court's opinion and order did not include a separate "order" section, the court did include a "conclusion" section in which it stated that the best interests of Child would be served by the provisions of its August 29, 2013 order.

-3-

as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed another opinion on August 12, 2014.

Mother now raises the following issues for our review.

I. Whether the trial court erred in failing to render a decision on remand which was consistent with this Court's findings, conclusions and directives in its remand order.

II. Whether the trial court erred and/or abused its discretion, under the law and the facts and circumstances of this case, by entering a custody order which separated siblings for virtually the entire year.

III. Whether the trial court erred and/or abused its discretion in granting primary physical custody of the subject child to the Plaintiff/Father under the law and the facts of this case.

Mother's Brief at 4 (trial court answers omitted).

We address Mother's claims mindful of our well-settled standard of review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
>
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[2]

Instantly, the trial court concluded that the majority of the Section 5328(a) factors either did not apply to the present case, or did not weigh in favor of either party. Trial Court Opinion, 7/7/2014, at 11-12. Notably, the trial court observed that Section 5328(a)(5) weighed in favor of Father, as Child's extended family resides in Pennsylvania. *Id.* at 11-12. The court also observed that Section 5328(a)(6) weighed in favor of Mother, as a

---

[2] Section 5328 has been amended to include an additional factor at 23 Pa.C.S. § 5328(a)(2.1) (relating to consideration of child abuse and involvement of protective services). Because Father's petition for custody review was filed prior to January 1, 2014, the effective date of Section 5328(a)(2.1), that factor does not apply to the instant case. *See* § 6 of 2013, Dec. 18, P.L. 1167, No. 107, effective 1/1/14. Moreover, that factor is not relevant to this case.

result of Child's relationship with Half-Brother. ***Id.*** However, the court concluded that Sections 5328(a)(5) and (6) "cancel each other out in this case, as based on the testimony about the [C]hild, the [c]ourt cannot assign a greater importance to one than the other." ***Id.*** at 11. Ultimately, the court reasoned that "the deciding factor" in this case was that Father was more likely to maintain a loving, stable, consistent and nurturing relationship with Child adequate for Child's emotional needs, pursuant to Section 5328(a)(9). ***Id.*** at 12. The court explained that "Father put the [C]hild's needs and concerns first" in that he, *inter alia*, was involved in Child's schooling, communicated with Mother about Child's schooling, was willing to facilitate a relationship between Child and Mother's relatives, listened to Child's fears, and expressed concern with respect to the supervision of Child while he stayed in Mother's home. ***Id.*** at 13. The court also noted that Father's home was "[C]hild's known physical environment since birth." ***Id.***

In contrast, the court found that "Mother painted an idyllic picture of the [C]hild's life in Louisiana, but her testimony was less than credible." ***Id.*** The court expressed concerns about Mother's parenting style with respect to Child, but also found that Mother and Father were equally capable of caring for Child. ***Id.*** at 12.

Mother's first issue on appeal is that "the trial court erred in failing to render a decision on remand which was consistent with this Court's findings, conclusions and directives in its remand order." Mother's Brief at 10 (capitalization omitted). Mother argues that, contrary to the instruction of

this Court, the trial court did not reconsider its prior order of August 29, 2013, but rather "simply reviewed the custody factors and drafted an opinion in support of its prior decision." *Id.* Mother also complains that the court "failed to acknowledge and address the prior conclusions which this Court found not to be supported by the record in this case." *Id.* at 12. Mother claims that the court "attempted to support its prior decisions by essentially characterizing Father's testimony as 'credible' and Mother's testimony as 'not credible' in a great many respects." *Id.* at 11. Mother contends that this was inconsistent with the court's prior opinions, including the court's opinion in support of its order of April 29, 2013, which characterized Mother as credible, and which were concerned primarily with the distance between the parties. *Id.* at 11-12.

We find no merit in Mother's claim. In our June 10, 2014 memorandum, we ordered the trial court to "reconsider the testimony, analyze this matter in light of the Section 5328(a) custody factors, and write a new opinion supporting its decision." *C.E.S.*, unpublished memorandum at 8 (footnote omitted). The trial court did exactly as instructed. The fact that the court did not reach a different decision following remand does not contradict this Court's order, and does not support Mother's contention that the court abused its discretion.

Moreover, the credibility findings in the trial court's July 7, 2014 opinion and order were not inconsistent with the trial court's prior opinion in

support of its order of April 29, 2013.[3] In its opinion in support of the April 29, 2013 order, the trial court found that Mother credible in two relevant respects. Specifically, the court found that Mother "testified credibly that both parents perform parental duties adequately," and that Mother "testified credibly that they both encourage telephone contact between the absent parent and the child." Trial Court Opinion, 10/29/2013, at 4. The court reiterated both of these findings in its July 7, 2014 opinion and order. ***See*** Trial Court Opinion, 7/7/2014, at 11 ("The parties agree, and Mother testified, that each [parent] is willing to encourage and permit frequent and continuing contact between the [C]hild and the other party. (Factor 1). They agree, and Mother testified, that they can both perform parental duties. (Factor 3)."). In contrast, the trial court stated that Mother had testified incredibly with respect to several issues that were not addressed explicitly in the opinion in support of the April 29, 2013 order. That is, the trial court found as incredible Mother's claims that she did not know about Father's difficulty obtaining Child's school records from Louisiana, that Father kept Child from seeing her relatives, that she had suffered abuse by Father, and that Child enjoyed an idyllic life in Louisiana. ***Id.*** at 3, 4, 11 n.4, 13.

---

[3] In her brief, Mother argues that the July 7, 2014 opinion and order also contradicted the court's October 7, 2011 opinion, issued after the September 15, 2011 hearing, as well as a 2009 order issued by a different judge. Mother's Brief at 11-12, 17, 19. We note that simply because the court found Mother credible during a past hearing does not mean that the court was required to find Mother credible at all subsequent hearings, and this does not suggest that the court abused its discretion.

The court also reiterated its prior finding that "[t]he major problem in this case is … the [lack of] proximity of the residences of the parties." *Id.* at 12.[4] Even if the court's opinions were inconsistent, Mother cites no authority for the proposition that the court was not permitted to reach inconsistent findings after having been ordered by this Court to "reconsider the testimony" in light of a different set of statutory factors. We discern no basis on which to conclude that the trial court abused its discretion.

Mother next claims that "the trial court erred and/or abused its discretion, under the law and the facts and circumstances of this case, by entering a custody order which separated siblings for virtually the entire year." Mother's Brief at 13 (capitalization omitted). Mother explains that, under the trial court's current custody scheme, Child will only be able to see Half-Brother "for a few weeks in August each year and perhaps a short time at Christmas," as Half-Brother is in the custody of his father during summer vacation. *Id.* She argues that separating them in this way was "an error of law and manifestly unreasonable." *Id.* at 13-14. Mother directs our attention to *Johns v. Cioci*, 865 A.2d 931, 942 (Pa. Super. 2004) (citation and quotation marks omitted), in which a panel of this Court reiterated that "the policy in Pennsylvania is to permit siblings to be raised together, whenever possible," including half-siblings, and that, "[a]bsent compelling reasons to separate siblings, they should be reared in the same household to

---

[4] The trial court echoed these sentiments in a third opinion, dated August 12, 2014. Trial Court Opinion, 8/12/2014, at 4-5, 10 n.4, 11-13.

permit the continuity and stability necessary for a young child's development." *Id.* at 14. Mother emphasizes the statement of this Court in its prior memorandum opinion, in which the panel questioned "'how sharing one month together during the summer is sufficient for the half-brothers to maintain the close relationship they already share.'" *Id.* (quoting *C.E.S.*, unpublished memorandum at 7). Mother contends that the trial court erred in concluding that Child's relationship with Half-Brother and his relationship with his extended family were of equal importance, and that "there is no legal authority supporting the conclusion that close relationships with extended family 'cancel out' a close relationship with a sibling, and the court below cited none." *Id.* at 15. Mother suggests that Child could maintain a relationship with his extended family if Father were given custody of Child during the summer. *Id.*

We again discern no abuse of discretion. While this Court has emphasized the policy that siblings should be raised together, this consideration alone is not determinative of which party should be granted primary physical custody of a child. *See Johns*, 865 A.2d at 942 ("[T]his Court has made clear that the policy against separation of siblings is only one factor-and not a controlling factor-in the ultimate custody decision.") (citations omitted); *see also M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013) ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.") (citation omitted). Here, Father

-11-

testified that Child is very close with Father's extended family in Pennsylvania. N.T., 8/29/2013, at 5 ("He's very close with my mom that he calls nana and my sister and he has his cousins, [D.] and [A.] ...."). The trial court was free to conclude that Child's relationship with Half-Brother was no more important than his relationship with his extended family under the facts of the instant case, and that this factor was outweighed by the court's finding that Father is more concerned than Mother with regard to Child's best interests. No relief is due.

Mother's third claim is that "the trial court erred and/or abused its discretion in granting primary physical custody of the Child to Father under the law and the facts of this case." Mother's Brief at 16 (capitalization omitted). Mother observes that the trial court has "stressed how comparable the parties' respective parenting abilities are, how the parties have been successful in preserving the relationship between the [C]hild and the other parent, and how the [C]hild is resilient and has thrived when in the custody of either parent." *Id.* at 17. However, Mother contends that the "several factors in this case which clearly support the conclusion that the trial court should have granted primary physical custody to Mother." *Id.* Mother states that she has "clearly improved the circumstances for herself and the [C]hild in moving to Louisiana," and emphasizes, *inter alia*, that she is married, has a good job, is involved with Child's education, involves Child in a church, and can provide Child with stability while maintaining a relationship with her extended family in Pennsylvania. *Id.* at 18. Mother

argues that granting her custody during the school year and granting Father custody during the summer months and during school vacations would be the "most reasonable and least disruptive modification of the prior custody schedule." *Id.*

Mother also repeats her claim that the trial court's opinions are inconsistent with one another, and complains that "the court below for the first time made findings regarding isolated incidents allegedly occurring at Mother's house and appeared to give them exaggerated significance," without explaining what these incidents were or arguing how their significance was exaggerated. *Id.* at 19. Mother claims that the trial court "also for the first time, and clearly contradictory to its prior findings, questioned Mother's parenting abilities and priorities, and even characterized Mother as 'self-centered' and showing 'a concern for her own interests, and not her child's.'" *Id.* Finally, Mother suggests that "an underlying theme in this case has been the lower court's criticism of Mother's decision to relocate to Louisiana," and that "Mother's decision in 2011 to relocate to Louisiana should have no impact whatsoever on the present issue of primary physical custody[.]" *Id.* at 19-20.

Mother has failed to establish that she is entitled to relief. While Mother contends that she has a good job in Louisiana, and can provide for Child, Mother makes no effort to explain how Father is any less able to raise Child than she is. The trial court found that both parents were capable of raising Child, but concluded that Father should have custody of Child during

the school year because Father's "home is [Child's] known physical environment since birth." Trial Court Opinion, 8/12/2014, at 13. This finding was within the court's discretion. The reality is that in this case, as the trial court pointed out, "this case is made difficult because of the great distance between the parties." *Id*. at 17. Both parents knew from early on that Child's primary residence during the school year would be determined as he approached first grade.

Further, as discussed *supra*, the court's July 7, 2014 opinion and order do not contradict the court's previous opinion. Even if it did, Mother does not direct us to any authority stating that the court could not reach a contradictory credibility finding after being ordered by this Court to "reconsider the testimony" in light of a different set of statutory factors.

We also reject Mother's contention that her relocation to Louisiana should have no impact on the court's decision to award custody. Again, Mother cites no authority for the proposition that Mother's decision to relocate could not be considered by the trial court.

Accordingly, because we conclude that none of Mother's claims entitles her to relief, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/2/2015</u>