J-A12011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.E.L., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| S.L., | |
| Appellee | No. 1171 MDA 2014 |

Appeal from the Order Entered June 20, 2014
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2007-01093

BEFORE: BOWES, DONOHUE AND ALLEN, JJ.

MEMORANDUM BY BOWES, J.:                          **FILED JUNE 04, 2015**

J.E.L. ("Father") appeals *pro se* from the June 20, 2014 order denying his petition for modification of a previous custody order that awarded S.L. ("Mother") primary physical custody of the parties' two daughters, L.L. and C.L., and granted Father periods of partial physical custody. We affirm.

Husband and Wife married on September 8, 2001, separated in January 2007, and divorced during October 2009. Two children, L.L. and C.L., were born of the marriage. On January 31, 2007, Father filed a complaint in divorce that included, *inter alia*, a count for custody of the children. The trial court appointed John A. Bellino, Esquire, as guardian *ad litem*. The action proceeded before a custody master, and on July 16, 2009, the trial court entered a custody order adopting the master's

recommendation to award Mother primary physical custody and to grant Father overnight custody on alternating weekends and partial physical custody for approximately four hours on Tuesday evenings. Neither party filed a *de novo* appeal, and despite multiple petitions to modify the custody arrangement, the custody order remained largely unchanged.

Father remarried and had two daughters with his current wife. On October 3, 2013, Father filed another petition for modification, wherein he requested primary custody of L.L. and C.L. During the ensuing two-day trial, Father and Mother testified and presented witnesses to support their respective positions. The trial court examined the children *in camera*.[1] As it relates to one of Father's complaints herein, the trial court declined to strike the guardian *ad litem's* custody report and recommendation on the grounds that it was not filed and served on the parties pursuant to Pa.R.C.P. 1915.11-2(c).[2] At the close of the evidentiary proceedings the trial court

_____

[1] Due to the trial court's concern that Father would interrogate his daughters about their testimony, the court subsequently ordered the notes of testimony of the *in camera* sealed and prohibited counsel from discussing the substance of the children's testimony with their clients. As Father does not challenge the trial court's directive, we do not address it herein.

[2] Pursuant to Rule 1915.11-2(c), the guardian *ad litem* is required to file and serve the report more than twenty days before the date set for the custody trial. Herein, the guardian *ad litem* failed to file the recommendation and faxed copies of the two-page document to respective counsel one week prior to trial.

directed the parties to file post-trial briefs and analyze their evidence in light of the statutory best-interest factors outlined in 23 Pa.C.S. § 5328(a).[3]

_____

[3] Pursuant to 23 Pa.C.S. § 5328(a), the determination of a child's best interest requires the examination of the following sixteen factors:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

*(Footnote Continued Next Page)*

On June 20, 2014, the trial court entered a custody order that effectively denied Father's request for primary custody. The trial court awarded shared legal custody and awarded Mother primary physical custody of the children. Father was granted an additional period of custody on Thursday evenings from 3:15 pm to 7:00 pm. Finally, the court ordered co-parenting counseling and directed Mother to provide Father with notice of medical appointments and school activities. The trial court's

*(Footnote Continued)* ————————————

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

contemporaneous memorandum outlined its consideration of the sixteen best-interest factors delineated in 23 Pa.C.S. § 5328(a). Trial Court Opinion and Order, 6/20/14, at 2-12. This timely appeal followed.

Father complied with Pa.R.A.P. 1925(a)(2)(i) by filing a concise statement of errors complained of on appeal concomitant with his notice of appeal.[4] He presents four questions for our review:

1. Whether the trial court erred in judgment to allow primary physical custody of minor children, [L.L. and C.L.], to remain with [M]other[.]

2. Whether the trial court failed to take into proper consideration the factors relating to custody as set forth in 23 Pa.C.S.A. § 5328.

3. Whether the trial court erred in judgment to allow the inclusion of the recommendation of the court appointed Guardian ad Litem . . . into evidence and use it as one of the deciding factors.

4. Whether the trial court abused its discretion in regards to evidence presented of misconduct and posts made on social media site, Facebook.

Father's brief at 3.

_____

[4] Presumably because Father failed to serve his contemporaneous filing with the trial court in accordance with Rule 1925, on July 22, 2014, the trial court entered an order directing Father to file a Rule 1925(b) statement within twenty-one days of that date. The order also instructed Mother to file a response to Father's Rule 1925(b) within seven days of Father's filing. Father complied with the trial court's order. Mother did not file a response; however, neither Father nor the trial court challenged the omission. Mindful that Rule 1925 does not require a party to respond to an opponent's concise statement of errors, we do not sanction Mother for failing to comply with the trial court's order.

Our scope and standard of review of a custody determination is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa.Super. 2013) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011)).

Herein, the trial court's June 20, 2014 custody order awarded Mother primary physical custody. As noted *supra*, the trial court properly considered the best-interest factors enumerated in § 5328(a). Essentially, the trial court determined that eleven of the enumerated factors militated in favor of awarding Mother primary physical custody. The remaining factors were determined to be either neutral or inapplicable. The trial court did not adjudge one factor in Father's favor.

Specifically, the trial court found, among other things, that Father's prior unfounded allegations of Mother's mental abuse of their daughters and Father's attempts to force L.L. to "recant" statements she made during private sessions with her mental health evaluators revealed a problematic "win at any cost" mentality. Trial Court Opinion, 6/20/14, at 4. In a related consideration, the trial court concluded that Father's preoccupation with L.L.'s discussions with her therapists upset that child and made her reluctant to confide in mental-health professionals for fear that Father would discover what she has told them. *Id*. at 9-10.

As it relates to the factors addressing the sibling relationships of L.L. and C.L. and the girls' well-reasoned custodial preferences, the trial court observed that, while the children are extremely close to each other, they had not bonded with their young half-sisters and both believe that their step-mother favors her children over them. *Id*. at 8. Likewise, the trial court found, "Without any doubt [L.L. and C.L.] do not want to live with their Father. . . . These children are intelligent and answered questions of counsel and the Guardian *ad Litem*. These were not yes and no response. [L.L.], age eleven (11), discussed the questions and gave detailed reasons for most answers." *Id*. at 8-9. The court relayed L.L.'s feeling that her stepmother berated her on occasions and teased her about the changes to her body during puberty. *Id*. at 9. The court reiterated the child's statements that "she does not like the way her stepmother talks to her and [that her

stepmother] likes to brag that her children are 'a lot better than me and my sister.'" ***Id***. (emphasis in original). Further observing that the child did not appear unhealthy or overweight, the court also noted L.L.'s objection to the manner that Father limited the amount of food she could consume. ***Id***. In relation to C.L., the child appears to enjoy spending time with Father but does not want to live with him. C.L., stated, "I like being with my mom the most." ***Id***.

Additionally, after close inspection, the trial court found that Mother maintained stability in the children's education, family life, and community even though she moved six times within a two-year period. Significantly, the court highlighted that the children never left their original neighborhood or changed schools, and continued their academic excellence during the period of uncertainty for the family. It concluded that these facts evidenced Mother's role as a stabilizing force in her daughter's lives.

Father's first complaint highlights two factual errors: C.L.'s age at the time of trial and whether the then-current custody order alternated the one night of partial physical custody between Monday and Thursday evenings. We agree with Father's position that the trial court misstated C.L.'s age as eight rather than nine years old at the time of the custody trial. Likewise, the certified record confirms that the prior custody order granted Father partial custody on Tuesday evenings, although the parties adjusted the period to accommodate their daughters' activities. However, these

misstatements of fact were inconsequential and do not warrant disturbing the trial court's custody determination. Stated simply, the errors as to C.L.'s age and the precise weeknight that the order permitted Father to exercise partial physical custody were immaterial and did not alter the trial court's statutory best-interest analysis. No relief is due.

Father's second argument challenges the weight of the evidence regarding the court's findings as to all but two of the best-interest considerations. Misinterpreting our standard of review and deference for the trial court's role as fact finder, Father contends that the trial court ignored certain evidence that inured to his benefit. This position fails to recognize that the court did, in fact, consider Father's evidence but, as the ultimate fact finder, the trial court discounted that evidence in favor of Mother's countervailing evidence. Thus, Father's argument demands that we re-examine the evidence presented during the two-day hearing in a more favorable light in order to attain a different conclusion. We decline to revisit the trial court's factual findings, which are supported by the certified record, in order to reassess the weight of the evidence. **J.R.M.**, **supra** at 650 ("with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand").

Next, we address Father's contentions that the trial court erred in accepting the guardian *ad litem*'s report and recommendation after the

guardian *ad litem* failed to comply with the procedural aspects of Pa.R.C.P. 1915.11-2(c). The crux of this complaint is that neither Father nor Mother received the requisite twenty-day notice to review the report and recommendation prior to trial. While Father's counsel outlined the potential prejudice associated with permitting the guardian *ad litem* to circumvent Rule 1915.11-2(c), such as the impediments to cross-examination regarding the guardian *ad litem*'s reasoning, analysis, and opinion, Father does not assert prejudice herein. Moreover, as the trial court noted in declining to strike the recommendation, the guardian *ad litem*'s brief report lacked substance and the objections that Father leveled against its admission ultimately concerned the weight that the trial court would assign to it.

Instantly, there is no indication in the certified record that the trial court assigned any weight to the report or recommendation. The court simply acknowledged the guardian *ad litem*'s recommendation under the statutory catch-all custody factor without adopting or specifically invoking the recommendation as a basis for its determination to maintain Mother's primary physical custody. In light of the trial court's thorough analysis of the enumerated best-interest factors and its consistent findings in favor of Mother, we cannot conclude that it was reversible error for the trial court to refer to the guardian *ad litem*'s recommendation under the heading, "[a]ny other relevant factor." ***See*** 23 Pa.C.S. § 5328(a)(16). Father's argument to the contrary is unpersuasive.

Father's final issue concerns the trial court's restrained reaction to the alleged misconduct by Mother and her witnesses outside of the court room on the first day of trial and Mother's posts on Facebook regarding the custody litigation. The relevant facts, as recited by Father, are as follows:

On February 21, 2014, the first day of custody trial, the Appellee and all of her witnesses were allowed access . . . to the [Luzerne County Sherriff's] security . . . room across . . . the hall from the court room. The security officer, [Deputy Sheriff] Michelle Castner, was in and out of that room and the court room during trial. . . . After the first day of trial, it was brought to the attention of Appellant that some posts were being put up on Facebook that he needed to see. He was given a few screen shots from [Mother's] Facebook page. There was a picture of . . . [Mother's] aunt [,Karen Peck,] in handcuffs, leg irons, and waist restraint with the caption, "Should have testified correctly, Lmao." This . . . witness [testified during the custody trial about] accusations of abuse committed by Appellant[.] The next screenshot [included] a status update . . . thanking [Deputy Castner] . . . for "a good couple giggles to get my mind off the hearing." [The security officer's] name is highlighted in blue which . . . indicat[es] that they are friends on Facebook[.] Another [witness and mutual] friend of [Deputy] Castner and [Mother], Holly Miller, . . . commented on the Facebook post stating, "the Judge told [me] he's not changing primary custody." This evidence was presented to Appellant's lawyer . . . whom [sic] presented it to [the trial court] before the second day of trial.

Father's brief at 33-34. Father also alleged that some of Mother's witnesses contravened the sequestration order by discussing the custody dispute in the hallway outside of the court room. He added that, when alerted to those discussions, the deputy sheriffs on security detail failed to confront the behavior.

- 11 -

After being informed of the alleged improper conduct, the trial court admonished Mother off the record for her actions, postings on social media, and her witnesses' behavior. According to Father, the trial court, "wholeheartedly denied telling anybody what his decision on custody would be before he heard the whole case or entered a verdict." *Id*. at 34. Essentially, Father's complaint on appeal is that the trial court's off-the-record remedy was insufficient. We disagree.

We observe that while Father's counsel brought the alleged misconduct to the trial court's attention, Father did not object to the trial court's choice of remedy. Father did not move to strike any of the ostensibly tainted testimony, request a mistrial, or propose an alternative remedy. Instead, Father accepted the trial court's rebuke of Mother and the court's verification that it neither made the statement attributed to it nor fashioned the custody decision prior to the close of evidence and argument. Having acceded to the court's remedy during trial, Father cannot assert error and prejudice at this late juncture. Hence, his claim fails.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

J-A12011-15

Date: <u>6/4/2015</u>