**M.J.M., Appellee**

**v.**

**M.L.G., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2013.

Filed March 1, 2013.

John M. Leonard, Latrobe, for appellant.

Kyle M. Baxter, Greensburg, for appellee.

BEFORE: DONOHUE, SHOGAN and WECHT, JJ.

OPINION BY DONOHUE, J.:

M.L.G. ("Mother") appeals from the order of court granting the petition of M.J.M. ("Father") for primary physical custody of the parties' minor daughter ("Child"). We affirm.

This is the latest front in an ongoing, acrimonious custody action between Mother and Father. By way of relevant back-

ground, we recite the following facts and procedural history. Mother and Father never married and Child is their only progeny. Father lives in Westmoreland County, where he has shared custody of his two other children. Mother lives in West Virginia with Child and six other children.[1] Child was about to turn six when this matter came before the trial court for a hearing. All of Mother's and Father's extended family live in Westmoreland County.

Child was born on August 28, 2006 in Westmoreland County. Father filed a complaint seeking joint legal and physical custody of Child on November 29, 2007. On March 28, 2008 an order was entered granting the parties joint legal custody, awarding Mother primary physical custody and awarding Father supervised visitation. Mother subsequently petitioned for permission to relocate to West Virginia. On January 6, 2009, by virtue of a consent order, the parties agreed to Mother's relocation and also agreed to increase Father's custodial time such that he progressed from supervised visitation to unsupervised, overnight custodial periods.

It appears that the parties were unable to abide by the terms of the consent custody order, as the record is veritably littered with petitions for special relief alleging violations of it. Additionally, during this time, Father asserted an objection to Mother's relocation to West Virginia and both parties alleged that Child suffered abuse while in the custody of the other.[2] On February 8, 2010, Father filed a petition seeking primary physical custody of Child. Mother then attempted to transfer the custody action to West Virginia, but the trial court denied her request. Following a hearing in July 2010, the trial court denied Father's petition and reaffirmed primary custody in Mother. It granted Father custody of Child every other week from Thursday evening through Sunday evening during the school year, and provided for Father to have custody of Child every other week, from Sunday to Sunday, during the summer. Trial Court Opinion, 7/26/10, at 1. Father was ordered to pick up Child at the West Virginia State Police barracks in Fairmont, West Virginia, and Mother was ordered to retrieve Child from Father at the Pennsylvania State Police barracks in Greensburg.[3] *Id.*

The parties continued to engage in conflict, including a protracted dispute regarding Mother's allegedly unilateral action in enrolling Child in kindergarten, allegations about the fitness of various paramours and family members of both parties, allegations of physical abuse by Father against third parties, and allegations that Mother habitually failed to inform Father of doctor appointments or school functions for Child. On January 26, 2012, Father filed a request for modification seeking primary custody of Child. Following a hearing on the matter, the trial court granted Father's request. On August 9, 2012, the trial court entered an order giving the parties shared legal custody of Child and awarding Father primary physical custody. Mother was awarded partial physical custody to be exercised essentially in the same manner Father had been exercising his partial custody prior to the entry of

---

1. Mother's other children ranged in age from 18 to one and a half at the time of the present custody proceedings.

2. All allegations were ultimately deemed unfounded.

3. Although not germane to this appeal, we note that in this order, the trial court also found that Father consented to Mother's relocation and declined to revisit the issue. Trial Court Opinion, 7/26/10, at 1.

this order. *See* Trial Court Order, 8/9/12, at 2–4.

This appeal followed, in which Mother presents the following issues for our review:

1. Whether the child custody order appealed from should be reversed where the trial court failed to make requisite findings of fact and credibility and the requisite conclusions of law in the order as required by Pennsylvania law?

2. Where the child custody order appealed from should be reversed where the statutory factors in 23 Pa.C.S.[A.] § 5328 do not support the change in custody, and the trial court grossly abused its discretion in making findings of fact and conclusions of law that are unsupported by the record?

3. Whether the child custody order appealed from should be reversed where the trial court failed to apply the primary care [sic] doctrine to the case?

Appellant's Brief at 8.[4]

■ We begin with our scope and standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is, abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super.2011) (citation omitted).

■ In her first issue, Mother argues that the trial court erred because the opinion it issued in support of its determination was insufficient in content. Appellant's Brief at 29. By way of background, the trial court entered an order on August 9, 2012 awarding primary physical custody of Child to Father and partial physical custody to Mother. In this order, the trial court stated that "Father needs to get [Child] enrolled in school as soon as possible. For this reason, the [c]ourt is issuing the Order of Court separate from the Explanation of Decision. The Explanation of Decision will be filed within the next seven (7) days." Trial Court Order, 8/9/12, at 5. The record indicates that the trial court filed an opinion explaining the reasons for its decision on August 16, 2012 ("Explanation of Decision"). Explanation of Decision, 8/16/12. After Mother filed her notice of appeal and Rule 1925(b) statement of matters complained of on appeal, the trial court issued its opinion pursuant to Rule 1925(a) on September 27, 2012 ("Pa. R.A.P. 1925(a) Opinion") addressing the issues Mother raised in her Rule 1925(b) statement. Mother now argues that in its Explanation of Decision, the trial court

---

4. We have re-ordered the issues raised by Mother for our discussion.

"failed to comply with Pennsylvania law that it consider all of the statutory factors and that it provide a comprehensive opinion containing a thorough analysis of that [sic] record and specific reasons for the court's ultimate decision." Appellant's Brief at 30.

Chapter 53 of the Domestic Relations Act, which we will refer to as the Custody Act, requires that that when making a custody award, "[t]he court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa. C.S.A. § 5323(d). This Court has previously interpreted this mandate as requiring a trial court to state the reasons for its custody decision prior to the filing of an appeal. *M.P. v. M.P.*, 54 A.3d 950, 956 (Pa.Super.2012). With respect to the custody order, Section 5328(a) provides as follows:

> (a) **Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.

> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
>
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
>
> (11) The proximity of the residences of the parties.
>
> (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.
>
> (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
>
> (14) The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In *J.R.M.*, the trial court issued an opinion in conjunction with its order awarding the mother primary custody in which it failed to address each section 5328(a) factor. Instead, it "based its decision almost exclusively on the fact that Child is breastfeeding and the parties' difficulty commu-

nicating with each other" and made no mention of the preponderance of the section 5328(a) factors. *J.R.M.* 33 A.3d at 652. By failing to address each section 5328(a) factor in its opinion, we concluded that "the trial court failed to properly consider the statutorily mandated factors in arriving at its custody determination[.]" *Id.* We held that the trial court must expressly consider all of the section 5328(a) factors when entering a custody order in order to comply with the Custody Act's requirements, and that failure to do so amounts to an error of law. *Id.; see also M.P.,* 54 A.3d at 956 (holding that the trial court is required to provide reasons for its decision prior to appeal).

While the Custody Act requires a trial court to articulate the reasons for its decision prior to the filing of a notice of appeal and sets forth explicit factors that the trial court must consider when reaching its decision, 23 Pa.C.S.A. §§ 5323(d), 5328(a), Mother argues that that the trial court's articulation of its reasons must be detailed and extensive. She contends that the trial court is required to include references to the record, analysis of the conflicting evidence, findings as to the credibility of the witnesses on the particular issues and discussion of the witnesses' respective biases. Appellant's Brief at 29.

■ Mother misinterprets the depth of the trial court's obligations. The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors. 23 Pa.C.S.A. §§ 5323(d), 5328(a). Contrary to Mother's argument, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. For example, from the trial court's Explanation of Decision in the case at bar,[5] it is clear that while the trial court found the majority of the section 5328(a) factors to balance fairly equally between Mother and Father, the trial court found that Father was more likely to promote a relationship with Mother than Mother would with Father and that Mother's attention to Child's educational needs was a point of grave concern. The trial court further concluded that Father would better attend to these needs. Explanation of Decision, 8/16/12, at 1–9.[6] Thus, in its Explanation of Decision, the trial court did precisely what it should have done; it weighed the entirety of the section 5328(a) factors in making the custody determination and articulated its considerations in a manner that informed the parties of the reasons for the custody award.

■ Mother argues that the trial court was required to include in its Explanation of Decision the detailed discussion of testimony (complete with citations to the record) that the trial court included in its Pa.R.A.P. 1925(a) Opinion. We disagree. That the trial court provided a more detailed discussion in its Pa.R.A.P. 1925(a) Opinion is eminently reasonable, and, indeed, expected, as the purpose of a Pa. R.A.P. 1925(a) opinion is to address dis-

---

**5.** The trial court begins its Explanation of Decision with the statement that it "has reviewed the factors set forth in [section] 5328(a). After reviewing these factors, the [c]ourt determined that the above [f]inal [c]ustody [o]rder is in the best interest of the minor child." Explanation of Decision, 8/16/12, at 1. It then proceeds to review all of the factors, albeit not in the order in which they are listed in the statute. *See id.* at 1–4.

**6.** Moreover, we note that here, as in every case, when explaining its conclusions as to the section 5328(a) factors, the trial court necessarily resolved conflicts in testimony and made credibility determination.

crete issues raised by an appellant on appeal. *See* Pa.R.A.P. 1925(a); *see also, E.D. v. M.P.,* 33 A.3d 73, 81 (Pa.Super.2011). Because the trial court adequately addressed the section 5328(a) factors in its Explanation of Decision and merely expanded on its findings in the Pa.R.A.P. 1925(a) Opinion, we find no error on the part of the trial court or merit in Mother's argument.

In her second issue, Mother argues that the primary custody award to Father is not supported by the law. Mother contends that none of the factors listed in section 5328(a) favors Father, contrary to the trial court's conclusions. She then addresses each factor individually (while citing to evidence that is most favorable to her) and argues that each factor either weighs in her favor or "weighs for or against neither party." Appellant's Brief at 32–43.

We have already concluded that the trial court has appropriately considered the factors enumerated in section 5328(a), and that its findings in connection thereto are supported by the record. Mother is asking us to reject the trial court's findings and credibility determinations in favor of the factual findings and credibility determinations she proposes. This we cannot do. As stated above,

> [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding

trial judge who viewed and assessed the witnesses first-hand.

*J.R.M.,* 33 A.3d at 650. Accordingly, Mother is not due relief on this claim, either.[7]

In her final issue, Mother argues that the trial court erred by failing to give proper consideration to her role as Child's primary caretaker. Appellant's Brief at 31. While the trial court indicated that it did consider Mother's role as Child's primary caretaker in rendering its decision, *see* Explanation of Decision, 8/16/12, at 7; Pa.R.A.P. 1925(a) Opinion, 9/27/12, at 16,[8] Mother argues that the trial court erred by not giving her "positive consideration" for her role as Child's primary caretaker, pursuant to the primary caretaker doctrine. Mother states, without discussion of the parameters of the primary caretaker doctrine, that the primary caretaker doctrine is applicable in this case, and that "the application of this doctrine is required when the facts support it." Appellant's Brief at 31.

■ The "primary caretaker doctrine," as it has come to be known, had its genesis in *Commonwealth ex rel. Jordan v. Jordan,* 302 Pa.Super. 421, 448 A.2d 1113 (1982). In that case, this Court held that in cases involving an award of primary custody *"where two natural parents are both fit,* and the child is of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker." *Id.* at 1115 (emphasis added); *see also Masser v. Miller,* 913

**7.** Mother attempts to insert two issues regarding evidentiary rulings in the midst of her argument on this issue. Appellant's Brief at 35–37. These issues were not included in Mother's statement of questions involved, and so they have been waived. *Cobbs v. SEPTA,* 985 A.2d 249, 256 (Pa.Super.2009); Pa.R.A.P. 2116(a).

**8.** In response to Mother raising this issue on appeal, the trial court clarified in its Pa.R.A.P. 1925(a) Opinion that it considered the fact that Mother had been Child's primary caretaker, but the trial court found that this fact was outweighed by its concerns about the quality of care Mother was providing. Pa. R.A.P. 1925(a) Opinion, 9/27/12, at 16.

A.2d 912, 921 (Pa.Super.2006); *Kirkendall v. Kirkendall*, 844 A.2d 1261, 1264 (Pa.Super.2004); *Wheeler v. Mazur*, 793 A.2d 929, 935 (Pa.Super.2002); *Wiskoski v. Wiskoski*, 427 Pa.Super. 531, 629 A.2d 996, 999 (Pa.Super.1993), *appeal denied*, 536 Pa. 646, 639 A.2d 33 (1994) ("[The primary caretaker doctrine] comes into play only when the parties are equally fit."); *Mumma v. Mumma*, 380 Pa.Super. 18, 550 A.2d 1341, 1344 (1988) (affirming trial court's decision to give weight to the mother's role as primary caretaker where it first found both parties were fit parents); *Schwarcz v. Schwarcz*, 378 Pa.Super. 170, 548 A.2d 556, 567–68 (1988); *Gonzalez v. Gonzalez*, 337 Pa.Super. 1, 486 A.2d 449, 452–53 (1984); *Haag v. Haag*, 336 Pa.Super. 491, 485 A.2d 1189, 1192–93 (1984). Thus, this doctrine was intended to be an additional consideration that would tip the scales in favor of the primary caretaker in a situation where the trial court deemed both parents to be fit to act as a primary custodian.[9]

■ Initially, we note that the trial court did not find mother and father to be equally fit to act as primary custodian, as it had concerns about "the quality of care" Mother was providing for Child. Pa. R.A.P. 1925(a) Opinion, 9/27/12, at 16; *see also* Explanation of Decision, 8/16/12, at 7. Accordingly, Mother was not entitled to application of this doctrine.

Furthermore, on January 24, 2011, major revisions the Custody Act took effect. *See* 23 Pa.C.S.A. § 5321 *et. seq.* These revisions included the addition of section 5328, which, as discussed above, sets forth a list of factors that a trial court must consider when making a custody determination. Prior to listing the specific factors, this provision provides: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S.A. § 5328(a).

The language of this statute is clear. It explicitly provides that all relevant factors shall be considered by the trial court, and the only factors that should be given "weighted consideration" are factors that "affect the safety of the child[.]" *Id.* "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); *see also Ario v. Ingram Micro, Inc.*, 600 Pa. 305, 317, 965 A.2d 1194, 1201 (2009). If the Pennsylvania Legislature intended for extra consideration be given to one parent because of his or her role as the primary caretaker, it would have included language to that effect. Stated another way, the absence of such language indicates that our Legislature has rejected the notion that in analyzing both parents, additional consideration should be given to one because he or she has been the primary caretaker.[10]

---

**9.** There are published decisions from this Court containing statements that suggest that the primary caretaker doctrine applies to all custody determinations. *See, e.g., Durning v. Balent/Kurdilla*, 19 A.3d 1125, 1129 (Pa.Super.2011) ("When conducting a best-interests analysis, a court must "give positive consideration to the parent who has been the primary caregiver."); *Klos v. Klos*, 934 A.2d 724, 729 n. 4 (Pa.Super.2007) (same), *Collins v. Collins*, 897 A.2d 466, 473 (Pa.Super.2006) (same). Such statements ignore the restrictions on this doctrine as to both the type of custody determination (primary custody awards between natural parents, *see Jordan*, 448 A.2d at 1115,) and the requirement of a predicate finding that both parents are otherwise equally fit.

**10.** Moreover, we believe that the Legislature's decision to omit a requirement of weighted consideration for the primary custodian recognizes reality in a way that the primary caretaker doctrine did not; specifically, that it

Furthermore, the consideration the primary caretaker doctrine sought to address (which parent spent more time providing day-to-day care for a young child) is addressed implicitly in the enumerated factors. *See, e.g.,* 23 Pa.C.S.A. §§ 5328(a)(3) ("The parental duties performed by each party on behalf of the child."); (a)(4) ("The need for stability and continuity in the child's education, family life and community life."). The considerations embraced by the primary caretaker doctrine have been woven into the statutory factors, such that they have become part and parcel of the mandatory inquiry.

In short, the Legislature has created a mandatory inquiry to aid trial courts in determining the best interests of the child in a custody dispute. In doing so, it articulated the components of a parent's obligations and characteristics, and a child's needs and welfare, that must be incorporated in the trial court's custody decision where the parents are incapable of doing so on their own. In setting forth these factors, the Legislature has required the trial court to give additional weight *only* to factors that it finds affect the safety of the child. This language is clear, and we cannot expand it to provide that a trial court must also give weighted consideration to a party's role as primary caretaker. We simply cannot graft the judicially-created primary caretaker doctrine on to the inquiry that the Legislature has established, and so we conclude that the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable.

 We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the section 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16). It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. *See A.D. v. M.A.B.,* 989 A.2d 32, 35–36 (Pa.Super.2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

Having found no merit to the issues Mother has presented, we affirm the ruling of the trial court.

Order affirmed.

---

is virtually impossible to conceive of a situation in which the parents' strengths are equal. The complexity of the analysis is aptly captured by the Legislature's painstaking listing of 15 mandatory considerations in 5328(a)(1)-(15) and the inclusion of a catchall "any other relevant factor" in 5328(a)(16).