J-A07015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| R.T., | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| Appellee | : | PENNSYLVANIA |
| v. | : | |
| J.T., | : | |
| Appellant | : | |
| v. | : | |
| C.V., | : | |
| Appellee | : | No. 1634 WDA 2015 |

Appeal from the Order September 16, 2015
In the Court of Common Pleas of Beaver County
Civil Division at No(s): 11560-2014

BEFORE: BOWES, MUNDY AND JENKINS, JJ.

MEMORANDUM BY BOWES, J.: **FILED MAY 19, 2016**

This case returns for review following our July 24, 2015 order vacating a March 18, 2015 custody order and remanding the matter for the trial court to determine whether R.T. ("Grandmother") met her burden in overcoming the presumption in favor of a fit parent, J.T. ("Mother"), as outlined in ***Hiller v. Fausey***, 904 A.2d 875 (Pa. 2006). On remand, the trial court considered the presumption and determined that Grandmother overcame it. On September 16, 2015, the court reinstated its March 18, 2015 order awarding

Grandmother partial physical custody of Mother's six-year-old daughter, G.A.

We affirm.

We previously adopted the trial court's recitation of the facts as follows:

> The appellant in this action is Mother, age 27, the natural mother of [G.A.]. Mother now lives in Allison Park, Pennsylvania, having relocated there in September of 2014. For the first 26 years of her life she resided with her mother, Grandmother[,] . . . in Beaver County, Pennsylvania.
>
> [G.A.] was born [during May 2009] while Mother was living with Grandmother. The evidence reflected that the natural father of [G.A.], C.V. ("Father"), has played no part in [G.A.'s] life to this date. It should be noted that Father did not appear for any of the proceedings leading up to the trial and was not present during the trial. Mother and Father were never married[,] have never resided together and have had virtually no relationship since the birth of [G.A.].
>
> The evidence further reflected that Mother was the primary caregiver of [G.A.], but she also worked at a casino in Pittsburgh and would be away from Grandmother's residence for significant periods of time for purposes of work and also spent overnights after work with her present fiancé, with whom she now lives. When Mother was not available, Grandmother took over the caretaking responsibilities for [G.A.], even to the extent of taking [G.A.] to work with her as confirmed by testimony by her employer, a veterinarian. From that testimony, it appeared that [G.A.] was a regular at Grandmother's work and well-liked and encouraged to be there by the employer. The testimony also reflected that Grandmother would handle other responsibilities for [G.A.] such as doctors' visits and matters at pre-school/school.
>
> The testimony clearly revealed that Mother had no problem permitting Grandmother to watch and care for [G.A.] up until the fall of 2014. In September of 2014, Mother and [G.A.] left Grandmother's residence. Mother claimed that she was forced

out of the residence by Grandmother, while Grandmother testified that Mother left with [G.A.] to live with her fiancé.

*R.T. v. J.T*, 2015 WL 6828144 (unpublished memorandum at 1-2)(quoting Trial Court Opinion, 4/23/15, at 2-3).

After Mother moved with G.A. from Grandmother's residence during September of 2014, she terminated Grandmother's contact with G.A. Grandmother filed a complaint for partial custody pursuant to § 5325 of the Child Custody Law, 23 Pa.C.S. §§ 5321-5340. The custody proceedings culminated in a one-day trial on March 17, 2015. The trial court issued its ruling from the bench. It discussed its findings of fact and conclusions of law in open court and outlined its consideration of the statutory best-interest factors on the record. The following day, the trial court entered a written order that awarded Mother legal and primary physical custody of G.A., awarded Father periods of partial custody, and granted Grandmother partial custody on alternating weekends from 6:00 p.m. Friday until 6:00 p.m. Sunday. The court also provided Grandmother twenty-four-hours of partial custody during Thanksgiving break, winter vacation, and Easter weekend, and ten consecutive days of custody during summer. In sum, Grandmother was awarded thirty-seven days of custody per year.

Mother appealed the March 18, 2015 order. She challenged, *inter alia*, the constitutionality of § 5325, as interfering with a parent's fundamental right to make decisions concerning the care, custody, and control of her

children. After reviewing our Supreme Court's analysis in **Hiller**, **supra**, wherein the High Court upheld the constitutionality of § 5311, the now-repealed predecessor to § 5325, we upheld the current version of the statute and rejected Mother's related arguments concerning the inapplicability of § 5325 under the facts of this case. However, as noted *supra*, we vacated the award of partial custody and remanded the matter for the trial court to consider **Hiller**, **supra**, and to explain whether Grandmother overcame the presumption in Mother's favor. Specifically, we held:

> [W]e still must afford Mother relief because the trial court did not apply the appropriate presumption. The trial court on the record reviewed the sixteen factors enumerated in 23 Pa.C.S.A. § 5328(a), which it must do in determining the child's best interest. Further, in its opinion, the trial court explained its rationale pursuant to the additional factors for grandparent custody set forth in section 5328(c)[.[1]] . . . However, the trial court does not mention the other factor that was critical to the **Hiller** court's holding: the presumption in favor of a fit parent's decision and Grandmother's burden in overcoming that presumption. . . . We remand the case to the trial court so that it may review the evidence with due consideration for the

_____

[1] The statutory factors relevant to a grandparent seeking partial custody pursuant to § 5325(2) are as follows:

> (i) the amount of personal contact between the child and the party prior to the filing of the action;
>
> (ii) whether the award interfered with any parent-child relationship; and
>
> (iii) Whether the award is in the best interest of the child.

23 Pa.C.S. § 5328(c).

presumption in Mother's favor and to determine whether grandmother has met her burden in overcoming the presumption.

**R.T.**, **supra** (unpublished memorandum at *7).

The trial court complied with our directive, applied **Hiller**, found that Grandmother presented sufficient evidence to defeat the presumption, and reinstated the March 18, 2015 custody order. Specifically the trial court concluded:

> The Court must now apply the principles [outlined in **Hiller**] to the facts as found in this case. As the Court recited in the Facts section of its Opinion of April 23, 2015 and as was set forth in the Facts portion of the Superior Court's Opinion in this case of July 24, 2015, the maternal grandmother played an integral part in this child's life until the time that the mother removed the child from the maternal grandmother's home. The maternal grandmother not only took a large responsibility in the child's every day care, but also provided a day care for the mother. This was so even to the point that the grandmother took the child to her employment because the mother was working and not available to care for the child and/or was staying overnight with her boyfriend, who lived near the mother's work. The maternal grandmother handled other responsibilities for the mother, including doctors' visits and matters at pre-school/school. The testimony at the trial of this case clearly reveal[s] that the mother had no problem permitting the maternal grandmother to care for and watch the child almost daily up until the fall of 2014 when the mother left the maternal grandmother's residence, where she had been residing since the child's birth, to live with her fiancé.
>
> Under these facts, the Court finds that the maternal grandmother has met her burden in overcoming the presumption in favor of the fit parent. The Court finds that, based upon these facts and the evidence of record, it is in the best interest of the child to continue a relationship with the maternal grandmother with the 37 days of partial custody that the Court set forth in its schedule and Order of March 18, 2015. This Court believes that

this finding is consistent with the Pennsylvania Supreme Court's findings that the grandmother had met the burden in the *Hiller* case, 904 A.2d at 890, and also believes that this finding should survive the strict scrutiny applicable to this finding as set forth in the appellate law and statutory law that preceded *Hiller* as well as the *Hiller* decision itself.

Trial Court Opinion, 9/16/15 at 3-4. This timely appeal followed.

Mother filed a *pro se* Rule 1925(b) statement that asserted nine issues that chiefly had been leveled in the initial appeal. She did not amend the statement after retaining current counsel. Now, she presents one issue for our review: "Whether the [trial] court abused its discretion and misapplied the law by reviewing the custody factors but failing to incorporate the appropriate presumption in favor of the fit Mother as was required by the Superior Court upon remand." Mother's brief at 6.[2] She requests that we vacate the order and issue another remand "for the trial court to review the evidence with due consideration for the presumption in Mother's favor prior

_____

[2] While Mother did not assert this specific claim in her *pro se* Rule 1925 statement, the issue can be characterized fairly as a restatement of the first and fourth issues that Mother raised and in the *pro se* statement, *i.e.*,: "Whether the trial court erred in granting partial custody to Grandmother over the objection of a fit parent when Mother has a fundamental constitutional right to the custody, care, and control of her child;" and "Whether the trial court abused its discretion [in] review[ing] [the custody factors without finding] a single factor that . . . favored [M]other." Rule 1925(b) Statement, 10/15/15, at 1. As the claim that Mother articulates on appeal is reasonably subsumed by the two foregoing issues, we decline to find it waived. *See* Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court[.]).".

to determining whether [Grandmother] has met her burden in overcoming the presumption." *Id*. at 18. For the reasons explained below, no relief is due.

We review the trial court's custody order for an abuse of discretion. ***S.W.D. v. S.A.R.,*** 96 A.3d 396, 400 (Pa.Super. 2014). We defer to the trial court's factual findings that are supported by the record and its credibility determinations. *Id*. This Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings. *Id*.

Mother's argument is imprecise and generally amounts to declarative statements concerning the framework of our remand. The crux of Mother's argument challenges the sufficiency of trial court's *Hiller* analysis, which we reproduced, *supra*. Essentially, Mother asserts that, although the trial court stated the reasons that it found that Grandmother was able to overcome the presumption, it neglected to identify the presumption specifically or "show [the presumption] due consideration." Mother's brief at 12. Mother contends that the court was required to "follow a formula" which she apparently interprets as requiring the court to accept all of the evidence that supported a finding that the presumption was insurmountable. *Id*. at 13-14. In addition, she complains, "The Court must be able to identify how the presumption in favor of the mother is shown before showing that [Grandmother] overcame the burden." *Id*. at 14. She posits, "The trial

court abused its discretion by failing to mention the Mother and failing to identify what evidence was used as the basis for [its] analysis of the presumption in [Mother's] favor." *Id*. at 17. Indeed, Mother complains that the entirety of the trial court's *Hiller* analysis "rests on actions and responsibilities which [Grandmother] operated under, on behalf of the child when [Mother] was living in her home." *Id*. She continues that, in focusing upon Grandmother's actions, the trial court neglected to consider G.A.'s best interest. *Id*. at 13.

The collective inference underlying Mother's sometimes-cryptic assertions is that the trial court did not understand our Supreme Court's discussion of *Hiller* and misapplied that authority in determining that Grandmother overcame the presumption in Mother's favor and tipped the balance in her favor. We disagree.

In *Hiller*, *supra*, our Supreme Court addressed the propriety of a custody order that awarded partial custody of a grandchild to a grandmother pursuant to the now-repealed § 5311. Significantly, the grandmother maintained a close relationship with her grandchild prior to the mother's death but the surviving parent objected to his daughter's continued contact with the grandmother. Consistent with prevailing case law, the trial court considered the presumption that a fit parent acts in the child's best interest and it concluded that the award of partial custody was in the child's best interest despite the Father's objection. In affirming the order, the High

Court reiterated that "the right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause." *Id*. at 877. However, it rejected the related principle that, as a precondition to partial custody, grandparents are required to demonstrate the child will suffer harm if custody is denied. *Id*. at 889-890. Instead, the Court concluded, "the stringent requirements of Section 5311 . . . combined with the presumption that parents act in a child's best interest, sufficiently protect the fundamental right of parents without requiring any additional demonstration of unfitness or specific requirement of harm or potential harm." *Id*. at 890.

The *Hiller* Court held that the trial court applied the presumption properly and gave what it styled "special weight" to the father's objection to the grandmother's contact with his child. *Id*. The Supreme Court highlighted the trial court's findings that the child benefited from her interactions with the grandmother, with whom she had a longstanding relationship and from whom she received emotional solace following her mother's death. The Court also noted that the trial court weighed whether the grant of partial custody would interfere with the parent-child relationship and determined that it would not. *Id*. Hence, the *Hiller* Court did not disturb the trial court's conclusion that the grandmother satisfied her burden of equalizing the presumption and tilting the allegoric scale in her favor.

First, we observe that, contrary to Mother's perspective, the trial court was not required to set forth the *Hiller* standard, "identify how the presumption in favor of the mother is shown" or "provide analysis which shows that the trial court considered evidence which meaningfully tipped the balance in the favor of the mother." Mother's brief at 12, 14. Mother's argument reveals her misunderstanding of the doctrine the high court outlined in *Hiller*. In reality, the presumption is not required to be shown or demonstrated. As with any evidentiary presumption, the presumption in favor of a fit parent exists independent of support. Stated plainly, in a custody action between a fit parent and a third party, the scale is automatically tipped in favor of the parent and a third party cannot prevail unless he or she adduced sufficient evidence to overcome the presumption and reorient the scale in his or her favor.

*Hiller*, *supra*, requires only that the trial court consider the evidence in light of the presumption and determine if the grandparent can overcome it and demonstrate that the grant of partial custody is in the child's best interest. Incorporating the best-interest considerations identified in then-effective § 5311, the *Hiller* Court outlined the following components of the *Hiller* analysis: the frequency of the grandparent's contact with the child; the strength of the grandparent-child relationship; the parent's likelihood to permit continued contact; whether partial custody was in the child's best interest despite the parent's preference; and whether partial custody would

interfere with the parent-child relationship. *Id*. at 877-879. The *Hiller* court rejected the requirement to demonstrate either parental unfitness or that the child would suffer harm if the request for partial custody is denied. As we discuss *infra*, the trial court's *Hiller* analysis addressed all of the foregoing components. *Id*. at 890.

Herein, the trial court conducted the precise examination that this Court directed in its July 24, 2015 opinion. Stated plainly, the trial court reviewed the evidence adduced at the trial with due consideration for the presumption in Mother's favor, and it determined that Grandmother met her burden in overcoming that presumption. As it relates to whether Grandmother neutralized the presumption, the trial court concluded that G.A. shared a close relationship with Grandmother based upon the latter's acceptance of many of the responsibilities connected with raising G.A. while Mother was unavailable. In addition to the daily interaction concomitant with residing together since birth, Grandmother accompanied G.A. to doctor's appointments and managed her schooling as Mother's surrogate. Similarly, she cared for G.A. while Mother was unavailable due to either employment or her social schedule.

While the trial court did not specifically articulate the precise benefit that G.A. gained from her daily interactions with Grandmother, a dynamic the trial court identified in *Hiller*, it observed that Grandmother had been an integral part of G.A.'s life for five years, and it stressed that preserving the

grandparent-child relationship was in G.A.'s best interest. The obvious implication of these findings is resounding—G.A. undoubtedly benefited from her longstanding relationship with Grandmother. Likewise, although the trial court's statement of rationale does not explicitly state that Grandmother's award of partial custody would not interfere with the parent-child relationship, the trial court addressed this component of the **Hiller** analysis during the prior appeal. Specifically, the court concluded, "there was no evidence that [the] award of partial custody for 37 days a year would interfere with the parent/child relationship." Trial Court Opinion, 4/22/15 at 7; **R.T.**, **supra** (unpublished memorandum at *7) (observing that trial court's § 5328(c) analysis addressed whether partial custody would interfere with parent-child relationship). Moreover, the trial court reiterated this position in its response to the *pro se* Rule 1925(b) statement that Mother filed in the instant appeal, which it incorporated by reference into the present appeal. **See** Memorandum Opinion, 11/16/15, at 2. Thus, despite Mother's protestations to the contrary, the trial court's **Hiller** analysis addressed all of the necessary components.

Next, we address Mother's challenge to the trial court's factual determinations. Mother contends "If the Court had taken a more expansive view, some of the grandmother's testimony, which the Court appreciated because of the grandmother's candor would be viewed as the primary reason the mother is seeking supervised visitation." Mother's brief at 17. Mother's

argument is nothing more than a request that this Court ignore our standard of review, reweigh the evidence, and make a determination in her favor. We must decline. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa.Super. 2013) ("We must accept findings of the trial court that are supported by competent evidence of record. . . . Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record."). Having found that the certified record sustains the trial court's findings of fact and its legal determinations are sound, there is no basis to overturn it.

For all of the foregoing reasons and consistent with our High Court's review of the trial court's determination in *Hiller*, we will not disturb the trial court's conclusion that Grandmother satisfied her burden of proving that her continued presence in G.A.'s life is so beneficial so as to equalize the presumption in favor of Mother and tilt the scale in her favor.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2016

- 13 -