J-A14028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| D.P.L. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| V.I.R. | |
| Appellant | No. 207 EDA 2017 |

Appeal from the Order Entered December 21, 2016
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C-48-CV-2016-05812

BEFORE:  BENDER, P.J.E., BOWES AND SHOGAN, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 17, 2017**

V.I.R. ("Mother") appeals from the December 21, 2016 custody order denying her motion to relocate with her two children, T.B.L. and S.B.L, from Bethlehem, Pennsylvania to Smyrna, Delaware.  We affirm.

T.B.L and S.B.L were born during June 2003 and March 2005, respectively, of Mother's relationship with D.P.L. ("Father").  Mother and Father never married.  Between 2003 and 2010, the family resided together in New York, New York, and then, in Bushkill, Pennsylvania.  Father worked full-time in New York City, commuting from Bushkill when necessary.  Mother occasionally worked part-time.  Mostly, she remained home to care for the children.

Mother and Father's relationship was tumultuous, and on several occasions, Mother left the family home with T.B.L. and S.B.L without notice to Father. During 2010, Mother and the girls relocated to Bethlehem, approximately one hour south of Bushkill. For the next year, Father exercised physical custody every weekend. However, he eventually stopped appearing for the custody exchanges and ultimately ceased contact with the children for approximately five months. Father blamed his inactivity upon a combination of his frustration with Mother's noncompliance with the custody arrangement and his contraction of pneumonia. Nevertheless, the extended absence caused T.B.L. and S.B.L to become estranged from Father, a impediment which continues to plague their interactions with him.

During 2012, Father filed a petition for custody, and following court-ordered reunification therapy and a period of supervised visitation, Father was awarded physical custody on alternating weekends. Mother remained the children's primary custodian. Although Father's relationship with his daughters did not improve, the court-ordered custody arrangement remained unchanged.

Mother currently resides in Bethlehem, Pennsylvania. She is a production technician for Bimbo Bakeries. During April 2015, Mother married K.B., who is on active duty with the United States Air Force. K.B., currently serving a four-year enlistment, is stationed in Dover, Delaware.

She intends to remain on active duty status for a total of twenty years, when her military retirement becomes available.

Father resides with his wife, M.L., and his five-year old stepdaughter in the former family home in Bushkill, Pennsylvania. He continues to commute to his employment as a building superintendent at a commercial building in Manhattan, a position that he has maintained for twenty years.

On July 8, 2016, Mother filed a petition for relocation seeking to relocate with the children to Smyrna, Delaware, to reside in the home owned by K.B. The trip from Bethlehem to Smyrna takes approximately two-and one-half hours by automobile. Father responded with a counter-affidavit lodging his objection to the proposed relocation pursuant to § 5337(h). During the ensuing two-day non-jury trial, Mother testified, *inter alia*, regarding the benefits of the proposed relocation to Smyrna. She does not have employment prospects in Delaware. Instead, Mother intends to pursue her education while K.B. supports the family financially. She posited that the relocation would allow her to spend more time with T.B.L and S.B.L and be more involved in their education, social life, and physical activities. She testified that the school system is comparable to the school district that the children currently attend. Ultimately, Mother desired to move to Delaware so that she and the children can be closer to K.B., who presented additional testimony about her home, the surrounding community, and her relationship with T.B.L and S.B.L.

As it relates to Father, Mother proposed that he exercise physical custody one weekend per month during the academic year and extended periods over the summer vacations. She recommended that the custody exchanges occur at an approximate half-way point between Bushkill and Smyrna.[1]

The trial court interviewed T.B.L and S.B.L. separately in chambers. Both girls stated their preference to relocate to Delaware and acknowledged their extreme animosity toward Father, whom they address by his first name. Although the older daughter, T.B.L., was able to identify the source of her acrimony, *i.e.*, feelings of abandonment associated with Father's extended absence and annoyance with what she perceives as his attempts to tear her from Mother, eleven-year-old S.B.L. has difficulty articulating her feelings. She simply stated that she does not feel comfortable around Father, who makes her feel like a "random stranger." N.T., 10/12/16, at 61.

In addition, the trial court considered the opinions and recommendations of two court-appointed experts, Ronald J. Esteve, Ph.D. and Anthony Cuttitta, a licensed clinical social worker. Both experts confirmed the girls' severe hostility toward Father and recommended, *inter alia*, that Father have frequent, consistent, and extended interactions with his daughters in order to improve the anemic father-daughter relationships.

---

[1] The most direct route between the communities by automobile is an estimated three-and-one-half hour trip.

While neither expert advocated against relocation, both recognized that the additional distance could cause further harm to the strained parent-child relationship. Specifically, Dr. Esteve opined that the distance could make it difficult to implement his recommendation to increase the frequency and duration of Father's contacts with T.B.L. and S.B.L. N.T., 8/31/16, at 17, 20, 23-24. Similarly, when asked about the proposed relocation's impact upon the continuing reunification process, Mr. Cuttitta explained,

> In terms of attachment issues, the girls attaching to him emotionally and psychologically, I don't think it would help . . . if he saw them, you know, very intermittently or [for a] couple weeks in the summer here and there. I think that kind of diminishes his significance in their lives, and I think it would continue to alienate him from their lives as a significant object. So no, I don't think that would help.

*Id*. at 42.

Following the close of evidence and review of the parties' legal memoranda, the trial court entered the above-referenced order denying Mother's petition to relocate to Delaware. Mother filed a timely notice of appeal and complied with the trial court order directing her to file a concise statement of errors complained of appeal pursuant to Pa.R.A.P. 1925(b). She raises one question for our review: "Did the Court err in not granting Mother's [p]etition for [r]elocation?" Mother's brief at 23.

We review the trial court's custody order for an abuse of discretion. *S.W.D. v. S.A.R.,* 96 A.3d 396, 400 (Pa.Super. 2014). We defer to the trial court's factual findings that are supported by the record and its credibility

determinations. *Id*. This Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings. *Id*.

In relation to relocation, the Child Custody Law provides:

**(h) Relocation factors**.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

In denying Mother's petition to relocate the children from Bethlehem, Pennsylvania, to Smyrna, Delaware, the trial court considered the ten relocation factors enumerated in § 5337(h). Specifically, the court found that §§ 5337(h)(1), (2), (3), and (5) favored Father to varying degrees and that, while §§ (h)(4), (6), and (7) militated in favor of Mother, those considerations were insufficient to warrant relocation. As part of its consideration of § h(10), the catchall factor, the trial court reviewed the best interest factors outlined in § 5328(a)[2], particularly §§ (a)(11) and (13),

_____

[2] § 5328. Factors to consider when awarding custody.

(a) Factors. – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and

*(Footnote Continued Next Page)*

which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by

relating respectively to the proximity of the residences and the levels of conflict and cooperation between the parties. The remaining relocation factors were either neutral or inapplicable.

The crux of Mother's argument is that the trial court erred in considering the statutory relocation factors through the lens of T.B.L.'s and S.B.L.'s acrimony for Father and the impact of the proposed relocation upon the ongoing efforts to rehabilitate those relationships.[3] Mother essentially asserts that the trial court was required to examine the relevant statutory factors free of any hue cast by the critical need to repair the vitriolic father-daughter relationships. She specifically identifies the trial court's

*(Footnote Continued)* _____

> another party is not evidence of unwillingness or inability to cooperate with that party.
>
> (14) The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

[3] To the extent Mother asserts that the trial court's concern for the father-daughter relationships was not warranted because Father created the situation by abandoning T.B.L and S.B.L. for five months during 2011, the certified record belies the factual assertion that Father was solely responsible for the absence. Specifically, the trial court found that Father had explained the hiatus as being triggered by a severe illness and his frustration with Mother's noncompliance with the custody order. *See* Trial Court Order and Opinion, 12/19/16, at 7. As the record sustains this factual finding, we will not disturb it. *See* N.T., 10/12/16, at 84-85.

considerations of factors one, two, four, six, seven and eight as evidence of the court's preoccupation with the effect that the relocation would have upon the parent-child relationships. Essentially, she complains that the trial court assessed greater weight to factor three regarding the preservation of the girls' relationships with Father, than all of the remaining considerations combined. In sum, she asserts that the court predetermined that the proposed relocation would impact the parent-child relationship adversely and concluded that this reality "wipes out all other considerations and outweighs each individual factor." Mother's brief at 28. We disagree.

Mother's arguments fail for several reasons. First, the underpinnings of her assertions regarding the court's consideration of specific factors are faulty. Mother's objections to the court's analysis under factor one fails because, contrary to her protestations, the status of the father-daughter relationships is particularly salient to the court's consideration of "The nature, quality, extent of involvement and duration of the child[ren]'s relationship with . . . the nonrelocating party." 23 Pa.C.S. § 5337(h)(1). Likewise, the extreme animosity and parental alienation that is present in this case is significant to the court's proper contemplation of "the likely impact the relocation will have on the child's physical, educational and emotional development." *Id*. at § 5337(h)(2). Similarly, the trial court could not effectually weigh the stated preferences of T.B.L and S.B.L. in favor of relocation pursuant to § 5337(h)(4) without also accounting for their disdain

for Father, ambivalence toward his hardship, and the aggravating effects that the proposed relocation would have upon the already-strained rapport. As the foregoing statutory factors implicate T.B.L.'s and S.B.L.'s relationships with Father, we reject Mother's contention that the court erred in examining those considerations through the lens of Father's ongoing efforts to rectify the turbulent dynamic among him and his daughters.

In relation to the sixth and seventh factors, which Mother complains were improperly weighed, the trial court found that both components militated in favor of relocation but that they were insufficient to overcome the harmful effect that the relocation would have on the children's relationship with Father. It is beyond argument that the mandate to assess the statutory factors and to balance those collective assessments rests with the trial court as the ultimate arbiter of fact. As we explained in **M.J.M. v. M.L.G**., 63 A.3d 331, 339 (Pa.Super. 2013), "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case."

Mother's contention that the trial court misapplied the eighth factor, relating motives, fares no better. The assertion is simply incorrect. The trial court found that the motives of both parties were sincere and did not weigh the factor in favor of Father. Instead, the court recognized that Mother's decision to relocate three-and-one-half hours away from Father's home placed her desire to be with K.B. above Father's interest in realizing a

constructive relationship with his daughters. As this is an accurate observation of the circumstances, Mother's attempts to assail it as an improper consideration fails.

Moreover, the oversight that Mother requests this Court to exercise over the trial court's consideration of the statutory factors is contrary to our jurisprudence. A party cannot dictate the weight that the trial court attributed to the evidence or its consideration of any single factor. *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014) (citation omitted) ("Rather, the paramount concern of the trial court is the best interest of the child."). Recall that it is the fact-finder's purview to decide which of the enumerated factors are the most salient to the facts of a particular case. *M.J.M.*, *supra*, at 339. Furthermore, consistent with our standard of review, we will not interfere with the trial court's consideration of the children's best interest absent an abuse of discretion. *Id*. Stated plainly, "The test is whether the evidence of record supports the trial court's conclusions." *Id*. quoting *Ketterer v. Seifert*, 2006 PA Super 144, 902 A.2d 533, 539 (Pa.Super. 2006). Thus, insofar as Mother's argument challenges the trial court's determinations regarding the weight and saliency of the various statutory factors, no relief is due.

Finally, to the extent that Mother complains that certain aspects of the trial court's consideration of the father-daughter relationships were contrary to the evidence, this argument also fails. During the evidentiary hearing,

the trial court considered the expert opinions of two court-appointed evaluators, Dr. Esteve and Mr. Cuttitta. In addition to acknowledging the children's extreme animosity toward Father, Dr. Esteve found a lack of ambivalence that suggests long-term parental alienation. N.T., 8/31/16, at 17. He noted that, while both girls demonstrated dramatic behavior, their animosity toward Father can be improved with intensive counseling so long as the parties support the process. *Id*. at 21. Dr. Esteve endorsed Father engaging in interactions with the girls more frequently and for longer durations. Specifically, he recommended frequent counseling sessions with each daughter separately, an improved level of communications among the family, and less interference by Mother. *Id*. at 17.

While Dr. Esteve declined to proffer a specific opinion as to relocation *per se*, he stated unequivocally that he would discourage the relocation to the extent that it impinged upon his recommendations for increased interaction. *Id*. at 20. He expounded, "So if the relocation still permits all of those recommendations that I just described to occur . . . then maybe there can be an argument for [it]. However, if [relocation] further makes it difficult to do all of what I just described, then of course I would discourage it." *Id*. at 20.

Mr. Cuttitta's testimony paralleled Dr. Esteve's assessment, however, Mr. Cuttitta's references related to his interactions with T.B.L. and S.B.L.

during the 2014 reunification therapy.[4]  Importantly, Mr. Cuttitta identified in the children significant reluctance to associate with Father and a resistance to any reunification efforts.  *Id*. at 39.  He noted substantial hostility on the girls' part and an unwillingness to allow themselves to accept Father's attempts to re-engage. *Id*. at 39-40.

Mr. Cuttitta opined that Father needs to maintain consistent interactions with T.B.L. and S.B.L. over extended periods in order to repair the damaged relationships.  *Id*. at 41.  He recommended weekly, or at least bi-weekly, overnight visitation.  *Id*.  As noted, *supra*, Mr. Cuttitta would not support any proposed relocation scheme that impeded Father's ability to interact with his daughters regularly.  He summarized his opinion with the following query, "[H]ow do you attach with your daughters if you're spending most of your time traveling back and forth?  It's ridiculous." *Id*. at 43.

In light of the court-appointed experts' shared perspective of the parent-child relationships and the joint recommendation that Father maintain more frequent contact with T.B.L. and S.B.L. in order to repair the damaged relationships, we find no basis to conclude that the trial court erred

---

[4] Although Mother does not assert that Mr. Cuttitta's testimony is stale considering the fact that he discontinued his contact with the family during 2014 or 2015, we observe that his expert assessment is founded upon the girls' static disdain for Father which has continued to plague Father's reunification efforts since the family last utilized therapy.

in highlighting the girls' enmity in its consideration of the relocation factors pursuant to § 5337(h).

Having found that the certified record sustains the trial court's decision to deny Mother's petition to relocate T.B.L. and S.B.L from Bethlehem, Pennsylvania, to Smyrna, Delaware, we affirm it.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2017