J-A14019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

KATHARINE OTTE

           Appellant

          v.

BENJAMIN BURSAE

           Appellee

:   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
:
:
:
:
:
:
:
:   No. 119 WDA 2021

Appeal from the Order Entered December 30, 2020
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD18-009546-017

BEFORE: MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.:            **FILED: JULY 9, 2021**

Appellant, Katharine Otte ("Mother"), appeals from the order entered in the Allegheny County Court of Common Pleas, which awarded Appellee, Benjamin Bursae ("Father"), primary physical custody of the parties' minor child ("Child"). We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> The parties and [Child] had previously lived as an intact family in Virginia. The parties divorced in April 2017 and entered into a custody agreement by which Mother had primary physical custody of [Child] and was permitted to relocate to the present jurisdiction, subject to Father's partial custody in Virginia. Less than two years later, Mother instituted the current custody action seeking to further reduce Father's custodial periods. Father filed a counterclaim seeking primary physical custody and shared legal custody.
>
> During the relatively short litigation, only a few pleadings

were filed by either party.  On July 12, 2019, Father filed a Petition for Contempt in which he alleged two specific instances in which he had attempted to exercise his custody of [Child] but that Mother had blatantly refused.  On September 5, 2019, Mother filed her own Petition for Contempt in which she alleged Father had taken [Child] out of state without consulting her.  The Petitions were deferred to a judicial conciliation.

The judicial conciliation occurred on October 4, 2019, but was ultimately unsuccessful at resolving the parties' issues. The case was listed for trial and the Petitions for Contempt were deferred thereto.  By Consent Order of Court dated November 26, 2019, the parties agreed to undergo psychological evaluations by the court-appointed evaluator.

On January 15, 2020, Father filed another Petition for Contempt in which he alleged Mother refused to exchange custody on the basis that [Child] was too sick to travel. When Father offered to stay in the jurisdiction to exercise his custody, Father alleged that Mother still refused.  By Consent Order of Court dated January 17, 2020, the parties agreed to consolidate Father's Petition with trial.  Due to the COVID-19 pandemic, the trial was delayed, but ultimately occurred remotely over the course of three days: August 13, 2020; September 30, 2020; and December 21, 2020.

(Rule 1925(a) Opinion, filed February 16, 2021, at 2-4).

At trial, the court heard testimony from the following witnesses: Patricia Pepe, Ph.D., who performed a court-ordered custody evaluation of the family; Ellen Boland Hagan, Esq., Child's former guardian *ad litem*; Bruce Chambers, Ph.D., who performed a critique of Dr. Pepe's report; Child's maternal grandmother; George Parker, a former close friend of both parties and current friend of Mother; Barry DeLuca, a licensed private investigator; Father's new wife; Curt Heimbach, the brother of Father's new wife; Kristina Tocarchik, the mother of Child's friend; and Jennifer Watson, a friend of Father's new wife.

Additionally, Mother and Father testified. Dr. Pepe ultimately recommended the court to award Father primary physical custody of Child due to Mother's attempts to minimize Father's role in Child's life.

By order dated December 29, 2020, and filed December 30, 2020, the court awarded primary physical custody during the school year to Father, with regular periods of partial custody for Mother, and granted equally shared physical custody during the summer. On January 25, 2021, Mother timely filed a notice of appeal along with a concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i).

Mother raises the following issues for our review:

> Does the trial court abuse its discretion, when it fails to consider the best interest of the minor child in the drastic change of physical custody?
>
> Does the trial court abuse its discretion, when it fails to require Father to demonstrate that parental alienation had in fact occurred before transferring physical custody out of state?
>
> Does the trial court abuse its discretion, when it fails to give appropriate weight and consideration to Mother's reasoning for her request for custody?
>
> Does the trial court abuse its discretion, when it grants Father's requested physical change in a gender-biased manner, as Father is married and Mother is not?
>
> Does the trial court abuse its discretion, when it fails to consider the psychological ramifications of removing a minor child from the only parent who has cared for the minor child throughout the minor child's lifetime?
>
> Does the trial court abuse its discretion, when it fails to demonstrate that relocating the minor child to an unfamiliar

state far away from the minor child's family with whom he enjoys close bonds would be in the minor child's best interest?

Does the trial court abuse its discretion, when it fails to consider the trauma that an out-of-state move would cause the minor child?

(Mother's Brief at 4-5).

The scope and standard of review in custody matters is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

***M.J.M. v. M.L.G.***, 63 A.3d 331, 334 (Pa.Super. 2013).

For purposes of disposition, we combine Mother's issues. Mother argues that the trial court failed to consider or placed inappropriate weight on various factors in its analysis of the 16 custody factors required for consideration. Specifically, Mother contends that the court abused its discretion by failing to

consider the best interest of Child; by failing to require Father to demonstrate that parental alienation had occurred before transferring physical custody out of state; by failing to give appropriate weight and consideration to Mother's arguments; by engaging in gender-biased decisions because Mother is not married; by failing to consider the ramifications of removing Child from his sole caregiver; and by failing to consider the trauma that an out of state move would cause Child. Mother concludes the court's custody award was erroneous, and that this Court must grant her relief. We disagree.

The Child Custody Act provides:

### § 5328.  Factors to consider when awarding custody

   **(a)   Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

>      (1)   Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
>      (2)   The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
>      (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
>      (3)   The parental duties performed by each party on behalf of the child.

(4)  The need for stability and continuity in the child's education, family life and community life.

(5)  The availability of extended family.

(6)  The child's sibling relationships.

(7)  The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)  The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)  Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)  The proximity of the residences of the parties.

(12)  Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)  The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)  The history of drug or alcohol abuse of a party or member of a party's household.

(15)  The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Instantly, the trial court analyzed each of the 16 custody factors in its custody opinion.  (*See* Trial Court Opinion, filed December 29, 2020, at 2). The court concluded the first factor favored Father, because Mother had engaged in egregious behavior by withholding custody from Father.  (*See id.* at 2-3).  The court found that factors two and three favored neither party, because there were no credible instances of abuse, and because both parties met and were likely to continue meeting Child's needs in this regard.  (*Id.*). The fourth factor favored Mother, since she and Child have lived in their current residence for four years and Child has always attended the same school.  (*Id.* at 4).  The fifth factor was neutral as both parties have extended family close to their residences.  (*Id.* at 4-5).  The sixth factor favored Father, as Child has a three-year-old half-brother and has a positive and loving relationship with his brother.  (*Id.* at 5).  The seventh factor favored neither party as Child did not testify at trial.

The eighth factor favored Father as there was testimony that Mother had attempted to turn Child against Father and insulted Father in Child's presence.  (*Id.* at 5-6).  The ninth and tenth factors favored neither party as both parents were able and likely to have loving and nurturing relationships with Child and to attend to his daily needs.  (*Id.* at 6).  The eleventh factor favored neither party, as Mother's and Father's residences are approximately seven hours' driving distance apart.  (*Id.*).  The twelfth factor favored neither

party as both parties work full time but were able to arrange for appropriate childcare as needed. (*Id.* at 6-7). The thirteenth factor favored Father, due to Mother's filing of a contempt petition where Father gave Mother sufficient notice of a vacation with Child, and Mother's other attempts to actively undermine Father's efforts to enjoy his custody. (*Id.* at 7). The fourteenth, fifteenth, and sixteenth factors were inapplicable. (*Id.* at 8).

With respect to Mother's specific claims on appeal, the trial court found, *inter alia*: (1) Mother's claim concerning the best interests of Child was too vague as presented in her concise statement and, accordingly, waived; (2) Mother failed to cite legal authority that required Father to demonstrate parental alienation actually occurred prior to the court's making a change in physical custody; rather, the court found that Father was the party more likely to encourage and permit frequent and continuing contact between Child and Mother, and the court emphasized Mother's attempts to turn Child against Father; (3) none of the 16 custody factors include Mother's reasoning for her request for custody; (4) nothing in the court's decision was based on gender bias, and the court only considered that Father is married under the "availability of extended family" factor; (5) Mother misstates the record by saying she is Child's "only caregiver" when in fact Father has also co-parented Child; (6) Virginia was not unfamiliar to Child as the family had previously lived there and Child used to visit that location; (7) no testimony indicated that Child would suffer trauma by moving to one of his two established homes during the school year. (*See* Rule 1925(a) Opinion at 5-9).

On appeal, Mother essentially asks this Court to reweigh the Section 5328(a) factors in her favor. We have carefully reviewed the record in this case, and because the record supports the trial court's reasonable findings and those findings were not the result of an error of law, we accept the trial court's findings and decline to reweigh the evidence. *See M.J.M., supra*. Accordingly, we affirm the custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/2021