J-A30006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.N.M.L. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| C.R.L. | |
| | No. 699 MDA 2016 |

Appeal from the Order Entered March 23, 2016
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 13-5721

BEFORE:  BOWES, OLSON AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 18, 2017**

M.N.M.L. ("Mother") appeals from the March 23, 2016 order wherein the trial court awarded Mother and C.R.L. ("Father") shared legal and physical custody of the parties' three children, K.L., S.L., and C.L.  We affirm.

Mother and Father married on June 1, 2002 and separated during May 2013.  Three children were born of the marriage.  The oldest daughter, K.L., was born during April 2003.  The couple's son, S.L., and youngest daughter, C.L., were born in July 2007 and April 2009, respectively.  Mother initiated the custody proceedings concomitant with her divorce complaint.  Following

a conciliation conference on November 8, 2013, the trial court entered a consent order outlining an agreed-upon custody arrangement.

Over the ensuing twenty-four months, the custody arrangement essentially withstood three petitions filed by Mother to modify custody and/or appoint a custody evaluation and one petition for special relief seeking to suspend Father's custody. The parties continued to share legal and physical custody of the children; however, Mother retained one additional overnight period of custody per month. Mother's most recent petition sought sole legal custody and primary physical custody. She believed it was in the children's best interest for Father's physical custody to be limited to overnights with the three children on alternating weekends and one evening per week with the two youngest children. Father countered by requesting equal physical custody.

The meandering procedural history culminated in a two-day custody trial. Mother testified and presented, *inter alia*, Arnold Shienvold, Ph.D., the court-ordered custody evaluator, and Shanen Turk–Geller, the child therapist that treats K.L. and S.L. Dr. Shienvold recommended that the parties share legal custody, with Mother being the ultimate arbiter of extracurricular activities. He also recommended that the parties essentially maintain the shared custody schedule except for the elimination of one of Father's evenings per month and the suspension of his Sunday overnights while school is in session. Mother's evidence focused on her perception of Father's

absentmindedness, anxiety, and poor judgment. She also highlighted the fact that Cumberland County Child and Youth Service performed two child abuse investigations regarding Father even though both reports were deemed unfounded.[1] Father testified and presented his own witnesses. The trial court interviewed the children *in camera*. At the close of the proceeding, the trial court entered the shared-custody order that is the genesis of this appeal.

Mother complied with Pa.R.A.P. 1925(a)(2)(i) by filing a statement of errors complained of on appeal concurrent with her notice of appeal. Although she initially asserted fourteen issues in her concise statement, she reiterated only five of those issues on appeal:

1) Did the [T]rial [C]ourt commit an error of law and gross abuse of discretion by finding . . . Father . . . credible while ignoring competent, corroborated evidence which clearly established Father had made false statements under oath?

2) Did the [T]rial [C]ourt commit an error of law and gross abuse of discretion by placing both parents on an equal par as "good" parents, despite the evidence of record establishing Appellant Mother as the primary caretaker who was the organized, attentive parent with no negative mental health history to which . . . Father conceded, compared to [his] history of mental health . . . and drinking problems[.]

---

[1] The Child Protective Services Law recognizes three types of child abuse reports: 1) an "Indicated report" is an agency determination that is supported by substantial evidence of alleged abuse based upon its own investigation; 2) a "Founded report" has been verified by a judicial adjudication of guilt, guilty plea, or plea of no contest; and 3) an "Unfounded report" is any report that is determined to be neither indicated nor founded.

3) Did the [t]rial [c]ourt commit an error of law and gross abuse of discretion by misplacing [f]actors 1 through 16 of Pa.C.S. §5328[a] to the competent evidence of record and then awarding shared physical and legal custody to the parties?

4) Did the [t]rial [c]ourt commit an error of law and gross abuse of discretion by giving insufficient weight to the competent and uncontroverted expert testimony of Dr. Arnold Shienvold and . . . the children's treating psychologist?

5) Did the [t]rial [c]ourt commit an error of law and gross abuse of discretion by awarding shared physical custody and then fashioning a vacation schedule favoring [Father], despite the record testimony of the children's annual trips to Florida to visit with their maternal grandparents?

Mother's brief at 4-5.

In **M.J.M. v. M.L.G.**, 63 A.3d 331 (Pa.Super. 2013), we reiterated the applicable scope and standard of review as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may

> legitimately affect the physical, intellectual, moral and spiritual well-being of the child.
>
> ***J.R.M. v. J.E.A.***, 33 A.3d 647, 650 (Pa.Super. 2011) (citation omitted).

***M.J.M.***, ***supra*** at 334.

Pursuant to 23 Pa.C.S. § 5328(a), the determination of a child's best interest requires the examination of the following factors:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

Herein, the trial court weighed all of the applicable factors in awarding shared legal and physical custody of the children. The trial court found that factor 2.1 was inapplicable and the remaining factors were either equal or the circumstances did not warrant weighing them to either parents' advantage. As it relates to the crux of Mother's arguments, the trial court explained its rationale as follows:

> Based on an analysis of the 17 custody factors, the Court deems it to be in the best interests of the Children that the

- 6 -

parties share legal custody, subject to the specific limitations set forth in the Order. Further, the Court finds it to be in the best interests of the Children that the parties share physical custody equally between the parents, both of whom appear to be concerned, loving parents who care deeply for their Children. These conclusions are incorporated into the accompanying Order of this date along with other directives to the parties that are designed to enable the Children to thrive in this situation.

It should be noted that while the Court appreciates the extensive and impressive evaluation completed by Dr. Shienvold, it did not necessarily adopt his recommendations *in toto*. This was done in part because of the Court's advantage in having testimony regarding much more recent events, particularly the advances that have been made through Father's own counseling as well as his joint counseling with Katie. It is noted that Dr. Sh[ie]nvold's last interview with the children was in May of 2015 (nearly a year ago), his last interview with Father was in July of 2015, and his last interview with Mother was in August of 2015. The Court feels confident that all parties have made progress since that time, and with the benefit of continued counseling as mandated by this Order, will continue to do so.

The Court does recognize that Mother was requesting that Father receive less time with the children, particularly over school nights. However, the Court was impressed with Father's efforts to improve his organizational and scheduling skills, and feels that advancements will continue in those areas, particularly with the help of the various counselors and therapists. Additionally, the parties have been living with virtually equal custody for the past several years, and the testimony indicated that things seem to be going rather well. Both parents did complain that there were too many transitions with the children between households; to the extent possible, the Court's Order attempts to minimalize that issue. Otherwise, the Court is satisfied that these parents should be given virtually equal opportunities to ensure that they both have the opportunity to continue to be involved, present and active in their children's upbringing.

Trial Court Opinion, 3/23/16, at 11-12.

As Mother's first four issues all challenge the trial court's factual findings and credibility determinations, we address those claims collectively. In her first argument, Mother assails the trial court's credibility determination relative to whether Father let the children watch "300," an R-rated fictionalized account of a battle during the Greco-Persian Wars. Chastising Father's parenting skills during her *in camera* interview, thirteen-year-old K.L. stated that she viewed the movie with Father on several occasions. Father denied that he gave his daughter permission to watch the movie. Mother asserts that the trial court's finding in Father's favor was reversible error and infers that the court's misplaced deference for Father's credibility permeated the custody case. Second, Mother contends that the trial court erred in finding that the parties were equally good parents, and she argues that court dismissed the custody evaluator's recommendations in reaching its faulty conclusion. She also asserts that the court overstated the significance of the six-month lapse between the October 2015 report and the April 2016 hearing. Her third argument assails what she characterizes as the trial court's "very cursory review" of the custody factors and challenges the court's reasoning as to **each** of the statutory considerations.[2] Mother's

_____

[2] While Mother states in her brief that she did not challenge the court's findings regarding factors eleven and twelve, paradoxically, the section of the brief relating to those factors contends that the trial court committed
*(Footnote Continued Next Page)*

brief at 30. The fourth complaint is that the court gave insufficient weight to the testimony proffered by Dr. Shienvold and Ms. Turk-Geller. In sum, she opines that, had the court assessed "proper" weight to the therapist's testimony and Dr. Shienvold's report and recommendation, "the trial court could not have concluded that Father was equally fit and that shared legal and physical custody was in the children's best interest." Mother's brief at 53. None of the foregoing arguments is persuasive.

Stated plainly, Mother's assertions misinterpret our standard of review and ignore our deference for the trial court's role as fact finder. Her arguments are replete with declarations that the trial court ignored, dismissed, overlooked, or discounted certain evidence that she believed militated in her favor. Contrary to Mother's protestations, however, a party cannot dictate the weight that the trial court attributed to the evidence or its consideration of any single factor. Indeed, as we explained in *M.J.M.*, *supra* at 339, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." Accordingly, we will not revisit the trial court's factual findings which are based on the certified record in order to reassess the weight of the evidence. *J.R.M.*, *supra* at 650 ("with regard to issues of credibility and weight of the

*(Footnote Continued)* ──────────────

reversible error by "ignor[ing] significant, uncontroverted evidence" in fashioning the custody order. *See* Mother's brief at 46.

evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand"). As the certified record validates the trial court's credibility determinations and its findings regarding regarding Father's parenting skills, Mother's weight claims fail even though she presented countervailing evidence in support of the opposite conclusion. It is evident that the trial court did not find Mother's evidence compelling.

Likewise, Mother's contention assailing the depth of the trial court's consideration of the custody factors as cursory and superficial is equally baseless. "The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors . . . there is no required amount of detail for the trial court's explanation[.]" *M.J.M.*, *supra* at 336. Indeed, "all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *Id*. As we outlined above, the trial court addressed the relevant factors and explained how the consideration impacted its decision. Thus, no relief is due.

Next, as it relates to her complaints that the trial court dismissed the custody evaluator's recommendations in reaching its conclusion, we point out that expert testimony is not entitled to special weight or value. In *Nomland v. Nomland*, 813 A.2d 850, 854 (Pa.Super. 2002), we addressed this precise issue and held that a trial court is not obligated to adopt an expert's conclusions so long as the trial court's conclusions are supported by

the certified record. *Cf. M.A.T. v. G.S.T.*, 989 A.2d 11, 20-21 (Pa.Super. 2010) ("While the trial court was not required as a matter of law to adopt [the expert's] recommendations, it was also not entitled to disregard them and to instead rely on personal views of [the child's] best interests not supported by the evidence of record."). Instantly, however, the trial court did, in fact, follow Dr. Shienvold's report and recommendation insofar as the custody order is aligned with the expert's recommendation for a balanced physical custody scheme. Like the trial court, Dr. Shienvold also rejected Mother's request for a physical custody arrangement that limited Father's custodial periods to one evening per week and two weekend overnights per month. Additionally, the custody order addressed Dr. Shienvold's concern that Father continue with his counseling. Specifically, the trial court directed that Father attend parent-child counseling per the requirements of Ms. Turk-Geller, participate in co-parent counseling with Mother, and continue treatment with the therapist in Dr. Shienvold's office. In addition, Father was required to take his prescribed medications and proscribed from consuming alcohol within twelve hours of obtaining physical custody of the children. As the custody order both incorporated Dr. Shienvold's recommendations for shared physical custody and addressed his concerns about Father's emotional health, we reject Mother's contention that the court erred in failing to adopt the report and recommendation *in toto*. *See Nomland*, *supra*, at 854 ("So long as the trial court's conclusions are

founded in the record, the lower court was not obligated to accept the conclusions of the experts.").

The crux of Mother's final issue is that the trial court erred by failing to provide her two consecutive weeks of summer vacation. She asserts that the court favored Father by permitting him to exercise his vacation custody without interruption. The record belies Mother's assertion of disparate treatment. The relevant portion of the custody order provides:

> 5. <u>Vacations</u>. Each parent shall be entitled to fourteen (14) days of vacation throughout the calendar year. To the extent possible, the vacations should be scheduled to coincide to the parent's custodial time. If the vacation time is to extend into the parent's noncustodial time, notice must be given at least thirty (30) days in advance. In the event that vacation extends into the non-custodial parent's time, make-up time will be given either immediately preceding or immediately following the vacation, whichever one the impacted parent prefers. Furthermore, special circumstances such as overseas vacations should be permitted after consultation with the other parent, and make-up time must be provided immediately preceding or immediately following the vacation, whichever one the impacted parent prefers.

Order of Court-Parenting Plan, 3/23/16, at 3-4.

The custody order clearly provides that **both** parties may exercise two weeks of summer vacation subject only to notice requirements and possible make-up time. As the trial court did not limit Mother's vacation to only non-consecutive two-week periods, her suggestion of a bias in favor of Father is baseless.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/18/2017</u>