J-S46006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.A.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| D.C.R. | |
| Appellant | No. 415 MDA 2017 |

Appeal from the Order Entered February 9, 2017
In the Court of Common Pleas of Franklin County
Civil Division at No(s): 2011-2240

BEFORE:  BOWES, J., OLSON, J., AND STEVENS, P.J.E.*

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 15, 2017**

D.C.R. ("Father") appeals from the February 9, 2017 custody order that granted the motion filed by S.A.R. ("Mother") to relocate with their daughter, Z.A.R., from Pennsylvania to Aurora, Colorado.  We affirm.

Z.A.R. was born during September 2010 of Mother and Father's marriage.  The family resided in Waynesboro, Pennsylvania, in a home owned by the paternal grandmother.  The parties separated during late 2010 or early 2011, but Mother and Z.A.R. remained in the marital home.  Mother exercised primary physical custody pursuant to a June 2, 2011 custody order.  Father was awarded three hours of supervised custody per week.

Father has not contacted his daughter since August 2011.  During summer 2011, Father absconded from authorities in relation to theft and

* Former Justice specially assigned to the Superior Court.

forgery charges involving Mother's grandmother. He was apprehended in Texas during October 2012, and he remained incarcerated until April 2016.

Mother and Z.A.R. continued to reside in Waynesboro until September 19, 2016, when she and Z.A.R. relocated to Aurora, Colorado, without providing notice pursuant to 23 Pa.C.S. § 5377.[1] Mother attended elementary and secondary school in Aurora, Colorado and lived there for sixteen years between 1983 and 1999. She and her fiancé, M.S., are former high school friends who reacquainted over the internet. Mother and Z.A.R. reside in a five-bedroom home with M.S., and his four children, whose ages range between six and sixteen. Then-six-year-old Z.A.R. explained to the trial court that M.S. was "kind of like [her] dad" and she refers to his children as her brothers and sisters. N.T., 1/30/17, at 223-224. Z.A.R. shares a bedroom with M.S.'s daughter, and as of the date of the evidentiary hearing, she was thriving as a first grader at Jewell Elementary School, which she attends with with M.S.'s youngest child, D.S. As it relates to her preferences, Z.A.R. testified that she is "kind of happy [in] Colorado and [in] Pennsylvania]." *Id*. at 231.

On November 14, 2016, Father filed a petition for civil contempt, which he amended two weeks later. Mother responded to Father's petitions,

_____

[1] Unlike most contemporary custody orders, the June 2011 custody order did not include the rote directive requiring the custodial parent to provide notice of a proposed relocation pursuant to § 5377.

and, on January 6, 2017, she filed a formal petition for relocation. During the ensuing evidentiary hearing, Mother presented evidence regarding the benefits of relocation. On February 9, 2017, the trial court granted Mother's petition to relocate from Waynesboro to Aurora, Colorado. As recompense for Mother's failure to comply with § 5337(h), the court awarded Father counsel fees and expenses pursuant to § 5337(j)(4).

This timely appeal followed. Father filed a concise statement of errors complained of appeal pursuant to Pa.R.A.P. 1925(b). He raised four issues, which he condensed on appeal into the following two questions:

> I.     Did the trial court err in granting Mother's proposed relocation to Colorado when the evidence and the trial court's own factual conclusion overwhelmingly support denying the relocation?
>
> II.    Did the trial court err by considering Mother's improper and premature move to Colorado prior to hearing as the basis to grant the relocation because denying the relocation would cause another change in residence for the child, thereby allowing Mother to benefit from her wrongdoing?

Father's brief at 6.

We review the trial court's custody order for an abuse of discretion. **S.W.D. v. S.A.R.,** 96 A.3d 396, 400 (Pa.Super. 2014). We defer to the trial court's factual findings that are supported by the record and its credibility determinations. **Id**. This Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings. **Id**.

In relation to relocation, the Child Custody Law provides:

**(h) Relocation factors**.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

In granting Mother's petition to relocate Z.A.R. from Pennsylvania, to Aurora, Colorado, the trial court considered the ten relocation factors enumerated in § 5337(h) and the best interest factors outlined in § 5328(a).[2] **See** N.T., 2/9/17, at 3-12, 14-20. Significantly, the court viewed

_____

[2] § 5328. Factors to consider when awarding custody.

(a) Factors. – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

*(Footnote Continued Next Page)*

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(Footnote Continued Next Page)

the statutory factors through the combined lenses of Mother's decision to return to Colorado despite only modest improvements to her quality of life and Father's demonstrated failure to maintain a relationship with Z.A.R. The trial court found that §§ 5337(h)(1) and (h)(3), concerning a child's relationship with the non-relocating party and the feasibility of preserving that relationship, favored relocation and that §§ (h)(6) and (h)(7), relating to the prospective improvements to the quality of life of Mother and Z.A.R., militated in favor of Father. The remaining relocation factors were either neutral or inapplicable.

The trial court also considered whether Mother's failure to provide the required notice of relocation warranted measures pursuant to § 5337(j)(1)-(5), which permit the court to consider the misstep as, *inter alia*, a factor regarding relocation, a basis to modify primary custody or return the child to the non-relocating parent, or grounds to impose expenses and attorney fees. Ultimately, the trial court determined that Mother's behavior did not warrant a denial of the petition to relocate or modification of primary custody. Instead, as noted *supra*, the court awarded Father counsel fees and expenses pursuant to § 5337(j)(4).

*(Footnote Continued)* ─────────────

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Father's first issue raises two distinct complaints. First, he assails the trial court's factual findings. Next, he challenges the trial court's decision to grant the petition for relocation despite its finding that several of the relocation factors weighed against it. We address the components separately.

In challenging the trial court's role as fact-finder, Father contends that it discounted Mother's attempts to thwart his relationship with Z.A.R. and ignored his evidence concerning his post-incarceration progress toward "recovery and establishing a stable, healthy environment" for his daughter. Father's brief at 13. In addition, he contends that the trial court did not adequately consider that Z.A.R. lived in Waynesboro for the majority of her life and developed "extensive, important and positive contacts and relationships" in that location, including a close relationship with paternal grandparents. *Id*. at 13-14. Comparing those relationships with his perspective of Z.A.R.'s personal interactions in Colorado, Father opines, "granting this relocation allows Mother . . . to cut down [his daughter's] family tree." *Id*. at 14. Notwithstanding the hyperbolic imagery, Father's assertions are not persuasive.

It is beyond peradventure that a party cannot dictate the weight that the trial court attributes to the evidence or its consideration of any single factor. *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014) (citation omitted) ("Rather, the paramount concern of the trial court is the best interest of the

child."). It is within the fact-finder's purview to decide which of the enumerated factors are the most salient to the facts of a particular case. *M.J.M. v. M.L.J.*, 63 A.3d 331, 339 (Pa.Super. 2013). Furthermore, consistent with our standard of review, we will not interfere with the trial court's consideration of a child's best interest absent an abuse of discretion. *Id*. Stated plainly, "The test is whether the evidence of record supports the trial court's conclusions." *Id*. (quoting *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa.Super. 2006)). Thus, insofar as Father's argument challenges the trial court's determinations regarding the weight and saliency of the various statutory factors, no relief is due. The trial court was the ultimate arbiter of fact, and we will not disturb its findings that are supported by the certified record.

The second aspect of Father's first issue overlaps with the second question he presented on appeal. Accordingly, we address those two arguments together. The crux of that collective assertion is that the trial court altered the statutory burden of proof and based its decision to permit Mother's relocation to Colorado on the improper grounds that denying relocation at this juncture would require extracting Z.A.R. from her now-comfortable environment in Colorado and returning her to Pennsylvania. Again, Father complains that the trial court's ultimate decision to grant Mother's petition for reargument runs contrary to its finding that several of the relocation factors weighed against it. He highlights that the trial court

"took a dim view of [M]other's choices" and motivations for the relocation, which the court characterized as immature and "somewhat selfish." *Id*. at 15, 16 (quoting N.T. 2/9/17, at 11, 16). Similarly, Father stresses that the trial court determined that the financial benefit of the proposed relocation was practically nonexistent and that the relocation was not certain to inure to Z.A.R.'s emotional benefit or the physical, educational, or financial benefit of Mother or Z.A.R.

Against this framework of complaints concerning the court's assessment of the relevant factors, Father asserts that the trial court violated 23 Pa.C.S. § 5337(l) in considering evidence of Z.A.R.'s acclimation to Colorado prior to the date Mother filed the petition to relocate. This latter position has several facets, including the reiteration of Father's prior contention that the trial court shifted the burden of proof and improperly based its decision to permit relocation upon the premise that denying Mother's motion would require Z.A.R. to endure another move. In addition, he asserts that the court failed to consider the facts as they stood at the time of relocation. In sum, Father surmises that, by considering evidence of Z.A.R.'s assimilation to her household and school in Colorado, it required Father to disprove that relocation was improper. For the following reasons, no relief is due.

Notwithstanding Father's protestations to the contrary, § 5337(l) does not prohibit custody courts from considering relevant evidence of a child's

best interests or require the court to view evidence with distrust. In reality, § 5337(l) merely states, "If a party relocates with the child prior to a full expedited hearing, the court shall not confer any presumption in favor of the relocation." 23 Pa.C.S. § 5337(l). Presently, the trial court conferred no such presumption. In reality, the court considered relevant evidence concerning Z.A.R.'s life with Mother in Aurora, Colorado.

In **B.K.M. v. J.A.M.**, 50 A.3d 168 (Pa.Super. 2012), we addressed whether a trial court erred in disregarding a mother's evidence regarding her children's activities in Sweden because the mother relocated with the children prior to the evidentiary hearing. In reversing the trial court, we first found that the unambiguous language of the statute simply prohibits a trial court from adopting a *prima facie* inference in favor of the relocating party and protects against requiring "the party opposing relocation to bear the burden of rebutting such an inference." **Id**. at 175. Additionally, we reasoned,

> The trial court, in making its ultimate determination, stated that it was bound to disregard this evidence, in order to avoid conferring a presumption in favor of relocation. This interpretation of section 5337(l), however, evinces a misunderstanding of the meaning of the word "presumption," and acts to convert a statutory provision on the allocation of burdens into what amounts to an extreme sanction on relocations that occur prior to a full expedited hearing. Moreover, by disregarding any evidence arising during the relocation, the trial court, in essence, conferred a presumption against relocation. The plain meaning of section 5337(l) supports neither the sanction enforced by the trial court by its refusal to consider a substantial portion of the record, nor the *de*

- 11 -

*facto* presumption against relocation. We conclude that the trial court's interpretation of section 5337(l) is, thus, an error of law.

Additionally, our review reveals that the trial court's interpretation of section 5337(l) resulted in a failure to properly consider all factors of section 5328(a) and 5337(h). The court omitted consideration of the parental duties performed in Sweden, of any need for stability and continuity established for the Children during their time in Sweden, and of the overall best interests of the Children, inasmuch as those interests might involve maintaining the status quo established by their life in Sweden over the past two years, which for the most part occurred with Father's agreement. As a result, the trial court failed to apply the necessary factors provided by section 5328(a) and 5337(h). **See E.D.** [**v. M.P.**, 33 A.3d 73, 79-80 (Pa.Super. 2011)].

*Id*. Accordingly, we vacated the custody order and remanded the case so that the trial court could consider evidence of the children's lives in Sweden, including their need for stability and continuity there.

Thus, contrary to Father's interpretation of § 5337(l), the trial court properly considered relevant testimony regarding Z.A.R.'s family, education, and activities in Colorado prior to the date Mother filed for relocation, and the court's consideration of that evidence did not confer a presumption in Mother's favor or relieve her of the burden of proof under § 5337. Thus, no relief is due.

Moreover, the certified record belies Father's contention that the trial court's primary reason for granting Mother's petition for relocation was that the disruption associated with requiring Z.A.R. to return to Pennsylvania would be detrimental to the child's best interest. Preliminarily, we observe

that Father's position completely ignores the trial court's finding that Father did not have any role in Z.A.R.'s life and that he has not contacted her since 2011. As noted, *supra*, the trial court determined that the relocation factors relating to the quality and duration of a child's relationship with the non-relocating party, and the feasibility of preserving the relationship between the non-relocating party and the child, weighed heavily in Mother's favor.

Specifically, as to the consequence of Father's apathy, the trial court reasoned,

> The trial court did not find Father's explanations as to why he did not exercise custody to be very meaningful or credible. It was apparent to the court that Father's efforts to secure custody seemed as much motivated by the actions of his mother, the paternal grandmother, as it was Father's own interests. Overall the court cannot see how Mother's decision to remove the child with her to Colorado would impact Father's custodial rights given his relative lack of interest in pursuing his custody rights prior to Mother's move to Colorado.
>
> . . . .
>
> It is not as if Father could regularly exercise custody of the child on a daily basis if Mother and child returned to Mother's prior residence. Sadly, when his daughter was only a few hours drive away, Father didn't take advantage of the opportunity to exercise custody with any regularity.

Trial Court Opinion, 3/15/17, at 3-4 (non-paginated).

Thus, faced with the Hobson's choice of choosing between Mother's self-centeredness and Father's demonstrated lack of interest, the trial court weighed the relevant best-interest factors outlined in §§ 5337(h) and 5328(a), and determined that Z.A.R.'s best interest demanded emphasizing

Mother's role in raising their daughter in Father's absence. In sum, the court concluded, Father's "lack of meaningful participation as a parent greatly undermine[d] his claims that the child's relocation interfere[d] with his custodial rights." *Id*. at 6.

Based on the foregoing, we affirm the custody order that granted Mother's belated request to relocate with Z.A.R. to Aurora, Colorado and crafted a new custody order that awarded Father periods of physical custody at paternal grandmother's home in Pennsylvania during summer vacation, and select holidays throughout the year.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/15/2017</u>